## UNITED STATES v. JUDAE & Co. (No. 2480) [1]

1. CONSTRUCTION—PARAGRAPHS 1403 AND 1429, TARIFF ACT OF 1922—IMITATION PRECIOUS STONES.

   Color alone is not a sufficient resemblance to justify classification under paragraph 1403 or 1429, Tarif Act of 1922, as imitation precious or semiprecious stones.

2. BEADS FOR EMBROIDERY.

   Beads of many different colors, sizes, and shapes, made of various materials—glass, paste, wood—chiefly used for embroidery, and resembling precious or semiprecious stones in color only, are classifiable as beads, under paragraph 1403, Tariff Act of 1922, and not as imitation precious or semiprecious stones under either paragraph 1403 or 1429.

### United States Court of Customs Appeals, June 23, 1925

APPEAL from Board of United States General Appraisers, G. A. 8848 (T. D. 40385)

[Affirmed.]

*William W. Hoppin*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.
*Allen R. Brown* for appellees.

[Oral argument May 19, 1925, by Mr. Carter and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD Associate Judges

SMITH, Judge, delivered the opinion of the court:

Glass beads imported at the port of New York and classified by the collector of customs as glass beads composed of glass, paste, or other material in imitation of precious or semiprecious stone, strung, loose, mounted, or unmounted, were assessed by him for duty at 45 per centum ad valorem under that part of paragraph 1403 of the Tariff Act of 1922, which reads as follows:

1403. * * * all other beads in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material composed, strung or loose, mounted or unmounted, 45 per centum ad valorem.

The importers protested that the merchandise was dutiable either as beads at 35 per centum ad valorem under the first clause of paragraph 1403, or as imitation precious or semiprecious stones, cut or faceted, at 20 per centum ad valorem, under paragraph 1429. The parts of paragraphs 1403 and 1429, relied upon by the importers, are as follows:

1403. Spangles and *beads*, including bugles, * * * 35 per centum ad valorem * * *.
1429. * * * imitation precious stones, cut or faceted, imitation semiprecious stones, faceted * * * *without hole or with hole partly through only*, 20 per centum ad valorem.   (Italics not quoted.)

The Board of General Appraisers sustained the protest and held the importation to be dutiable at 35 per centum ad valorem under

the first clause of paragraph 1403, whereupon the Government appealed.

On the hearing before the board testimony was submitted to the board on behalf of the importers to the effect that all of the merchandise with the exception of the crystal roundels or disk-shaped beads was used for the embroidering of dresses and the making of beaded bags or beaded dresses; that crystal roundels might possibly be used for making necklaces; that the imported beads were made in various colors for the production of flower or Paisley effects or other color combinations; that none of the beads imitated or were made to imitate precious or semiprecious stones; that the merchandise was known to the trade as beads; that the beads were strung simply to make it practicable to sell the beads in quantities; that when the beads were put to use the strings on which the beads were strung were not used, but were thrown away; that very little business was done in loose beads and that substantially all beads handled by the trade were strung; that the four-hole beads were made for sewing on dresses and making up ornaments and other things; that the four-hole beads were not used for jewelry purposes; that the beads represented by Exhibits 1, 15, and 16 were made of wood; that the English cut beads represented by Exhibits 17 and 18 were used for embroidering and once in a while for making necklaces; that none of the beads imitate any precious or semiprecious stones, although some of them have a color similar to that of precious or semiprecious stones; that the beads represented by Exhibits 1, 15, and 16 are made of wood and have a coral color; that there are several shades of coral; that beads of the kind imported are manufactured in various colors in order to create different designs and color schemes on bags, dresses, and millinery; that the beads in place on dresses, beaded bags, millinery, and articles of that type, produce a flower effect and do not give the impression peculiar to diamonds, rubies, or corals; that, even when strung, the merchandise continues to be known to the trade as beads; that, when beads are ordered, the color, size, and shape required must be stated, otherwise the seller would not know exactly what was wanted; that beads in various colors are required for color combinations and are used in the same way as an artist uses paints; that, if beads come into the country strung, the strings have absolutely no use and such beads must be restrung if stringing is required; that beads are usually purchased to match the cloth or material to which they will be attached; that beads are imported sometimes in as many as 20 different shades of the same color and that it is necessary to specify the color or shade desired; that beads such as those imported are not sold to the jewelry trade and, so far as known, are not in use for jewelry purposes.

On behalf of the Government, witnesses testified that the red wooden beads were known as red wooden beads and as coral wooden beads and that "some would call them red, light coral, or dark coral;" that wooden beads were sold to a cheap trade, but that they look like coral beads to *inexperienced* people, that the words coral and sapphire were used in the trade to *designate colors* and that there were many shades of sapphire and coral; that Exhibits 2, 3, and 8 had a sapphire color; that Exhibit 4 represented strung or bunch beads having a coral color; that Exhibits 6 and 12 were crystal roundels and resembled rock crystal; that Exhibit 7 was a red wooden bead; that Exhibit 9 represented nailhead or rosette beads which were ordered according to color desired; that Exhibit 10 was a rosette bead, yellow in color; that No. 11 was a nailhead bead, coral in color; No. 13, a bunch of beads of a coral color; No. 14, a nailhead bead, cherry red or coral in color; No. 17, an English cut bead ordered as crystal; No. 18, a new red bead; No. 19, a cherry red bead; No. 20, a rosette bead of amber color; No. 21, a rosette bead, blue in color; that all the beads except the yellow beads imitated precious and semiprecious stones in color; that all nontransparent red beads were called coral and all transparent red, rubies; that 13 of the exhibits could be used for making necklaces, chains, earrings, and bracelets; that all of the exhibits were used for embroidering and for trimmings, except the roundels; that there was a well recognized class of beads known to trade and commerce as beads in imitation of precious and semiprecious stones; that Exhibits 1 to 22 came within that class, with the exception of Exhibits 1, 2, and 10; that all "new red" beads in the trade came within the designation of beads in imitation of precious or semiprecious stones; that the coral colored wooden beads were imitations of coral; that Exhibits Nos. 10 and 22 were not regarded in the trade as imitations of precious or semiprecious stones; that Exhibit No. 2 would be ordered as rosette beads, sapphire or dark sapphire in color; that Exhibit No. 4 would be ordered as coral bunch beads; that 7 would be ordered as a red wooden bead, or it would be ordered to imitate a coral necklace or coral chain, or something else.

In rebuttal, the importers introduced testimony to the effect that the roundels resembled window glass more nearly than rock crystal; that the color of the beads did not have a reflective value like that of precious or semiprecious stones; that the importations were made of "ordinary light, colored glass;" that to make imitation precious or semiprecious stones a composite glass much harder than ordinary glass and containing lead must be used; that composite glass differs in texture from ordinary glass and is much heavier and more transparent than ordinary glass; that amber is a prehistoric gum and that to imitate it bakelite, not glass, should be used; that composite

glass was the only glass hard enough to cut like precious stones or to produce the effect of precious stones.

The testimony establishes to a certainty that the beads covered by importer's protest resembled precious or semiprecious stones in color only. To hold that a mere resemblance in color converted beads of wood and of ordinary glass into imitation precious or semiprecious stones would result in subjecting to radically different rates of duty beads which differed in color but in no other essential particular. It is extremely doubtful whether Congress intended to perpetrate any such anomaly as that and the doubt must be resolved in favor of the importer.

· According to the testimony of experts and dealers in imitation precious and semiprecious stones, the material used for making imitation precious or semiprecious stones is a composite glass containing lead which may be cut and faceted, thereby producing imitation precious or semiprecious stones. It further appeared that from such composite glass when backed with proper material imitations may be made even of diamonds. Color by itself is not sufficient to constitute an imitation of a precious or semiprecious stone and we must hold that the board's finding that the beads in controversy are not imitation precious or semiprecious stones is fully supported by the evidence.

The judgment of the Board of General Appraisers is therefore *affirmed.*