WINTER BROS. *v.* UNITED STATES (No. 3439)[1]

United States Court of Customs and Patent Appeals, November 2, 1931

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellant. *Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[1] T. D. 45245.

**114**

[Oral argument October 9. 1931, by Mr. Brown and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellant imported certain glass beads at the port of New York which were classified by the collector as "all other beads in imitation of precious or semiprecious stones," under the last clause of paragraph 1403 of the Tariff Act of 1922. The importer protested, claiming them to be dutiable under the provision for beads in the first clause of said paragraph, or, in the alternative, as "imitation precious stones, cut or faceted," or as "imitation semiprecious stones, faceted," under paragraph 1429 of said act.

In the court below reliance was placed by the importer upon its claim under said paragraph 1403, and the same is true in this court. It will therefore be considered that the contesting provisions here are the two said provisions in said paragraph 1403. The relevant portions of paragraph 1403 are as follows:

PAR. 1403. Spangles and beads, including bugles, but not including beads of ivory or imitation pearl beads and beads in imitation of precious or semiprecious stones, 35 per centum ad valorem; * * * all other beads in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material composed, strung or loose, mounted or unmounted, 45 per centum ad valorem: * * *.

The United States Customs Court overruled the protest, and the importer has appealed.

The imported articles, as shown by the samples, are strings of graduated beads of various colors, denominated by the importer's witnesses as pastel shades and further denominated according to their color, as aquamarine, amethyst, amber, rose, crystal, etc. The beads are cut and faceted and are mounted upon temporary strings and are separated by transparent glass rondelles. According to the testimony, they are imported in a great range of colors, only a few of which are shown by the samples before us. They are brilliant and much above the ordinary in appearance and are admittedly made of composition lead glass. The cutting or shaping of the beads seems to be identical in all of the samples and is of the general type designated by the witness Lassner as a "step-cut."

On the hearing below, seven witnesses were called by the importer and four by the Government, who testified as to the character of the particular importations involved here. The effort of the importer, by the testimony proffered by it, was to establish that the imported beads were not imitations of precious or semiprecious stones. To support this contention the witnesses for the importer testified, generally, that they were dealers in beads, and that the imported articles were not sold by them, or considered by them to be in imitation of

precious or semiprecious stones. It was asserted by some of these witnesses that the beads had not the appearance of any precious or semiprecious stones; that imitations of such stones were made in a different manner; that the names applied to the beads, namely, amethyst, topaz, crystal, and the like, were names designating colors, and not the quality or character of the beads.

On the other hand, the testimony of the witnesses called on behalf of the Government, all of whom seem to have had experience in the sale of precious and semiprecious stones, and imitations thereof, was to the effect that these beads were in fact imitations of semiprecious stones; that semiprecious stones are sometimes cut in the manner in which the imported articles are fabricated; that the various names of rose, topaz, amber, crystal, etc., used to designate these articles, although such names designate colors, are also used to designate the material of which the beads are composed.

There is a direct conflict between the testimony of these two sets of witnesses, and we are entirely unable, from a consideration thereof, to say that the judgment of the court below overruling the protest is manifestly against the weight of the testimony. As indicated in *United States* v. *Madeira Linen Importing Co.*, 19 C. C. P. A. (Customs) 116, T. D. 45246, decided concurrently herewith, in such cases we are not justified in disturbing the judgment of the court below.

It is argued by counsel for the appellant that the court below misapprehended the force and effect of the opinion of this court rendered in *United States* v. *Judae*, 13 Ct. Cust. Appls. 164, T. D. 41024. It is further contended that the court below, due to such alleged misconstruction of our conclusions in the case cited, failed to consider the testimony in the case at bar, relying solely upon its supposed misconstruction of the law in that case.

It is well-settled law that if the court below came to a correct conclusion and rendered a correct judgment, its judgment will not be reversed because of the method of reasoning which may have induced such judgment. It is the judgment of the court which is appealed from, and not its decision or opinion. *United States* v. *Tausig & Pilcer*, 18 C. C. P. A. (Customs) 421, T. D. 44681.

It is true that the court below, in its decision, referred to our opinion in the *Judae* case, *supra*, as—

a judicial determination to the effect that if beads are manufactured from a composite glass containing lead their character is changed from the common glass bead to an imitation of a precious or semiprecious stone, * * *.

The case cited did not go to this extent. In that case the testimony showed that beads in imitation of precious or semiprecious stones were made of composition lead glass and that the glass beads in question in that case were not made of such composition glass. Therefore, the court, deciding the case strictly upon the record made

before it, which showed the facts as above stated, held that the beads in question were not imitation precious or semiprecious stones. It was not intended to be held in that case that the presence of lead in the glass material should be taken as the deciding factor whether a bead was in imitation of a precious or semiprecious stone, unless such a conclusion were warranted by the record in the particular case.

However, whatever the views of the court below may have been upon this particular question, the decision filed plainly establishes that the court did not ignore the testimony in the case and decide the matter upon an erroneous conception of the conclusion in the *Judae* case. The concluding portion of the decision is:

*The weight of the testimony,* coupled with the agreement of counsel above set forth and the authority cited, fixes the classification of these beads. (Italics ours.)

In view of these suggestions, the judgment of the court below is *affirmed.*