446

UNITED STATES *v.* GENERAL TRANSPORT CO. (NO. 3774)[1]

United States Court of Customs and Patent Appeals, December 10, 1934

*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *Hugo P. Geisler,* special attorney, of counsel), for the United States.

*Brown & Carter* (*Allen R. Brown* and *Fred J. Carter* of counsel) for appellee.

[Oral argument October 9, 1934, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding certain small, perforated, animal-shaped articles, composed of mother-of-pearl, dutiable as beads, at 35 per centum ad valorem under paragraph 1503 of the Tariff Act of 1930, as claimed by appellee, rather than as jewelry, finished or unfinished, or parts thereof, at 1 cent each, and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem under paragraph 1527 (a) (2) of that act, as assessed by the collector at the port of New York.

The pertinent parts of the paragraphs read as follows:

PAR. 1503. Spangles and beads, including bugles, not specially provided for, 35 per centum ad valorem;   *   *   *   all other beads in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material composed, 45 per centum ad valorem: *Provided,* That the rates on spangles and beads provided in this paragraph shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted: *Provided further,* That no article composed wholly or in chief value of any of the foregoing beads or spangles shall be subject to a duty at a less rate than is imposed in any paragraph of this Act upon such articles without such beads or spangles.

---

[1] T. D. 47440.

PAR. 1527. (a) Jewelry, commonly or commercially so known, finished or un-. finished (including parts thereof):

 *    *    *    *    *    *    *

(2) all other, of whatever material composed, valued above 20 cents per dozen pieces, 1 cent each, and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem: *Provided,* That none of the foregoing shall be subject to a less amount of duty than would be payable if the article were not dutiable under this paragraph.

On the trial in the Customs Court, appellee called one witness, Louis Gentile, a member of the firm of F. & L. Gentile, importer of the involved merchandise (represented by appellee, General Transport Co., customs brokers).

The witness identified Collective Exhibit 1, and stated that it was representative of the involved merchandise. The exhibit consists of three small, perforated, animal-shaped articles, composed of mother-of-pearl. The witness testified that the involved articles are used as beads; that they are strung on cords or chains in the making of necklaces; that they are also used as "charms" and "pendants" for necklaces and bracelets, and, when so used, they are mounted on wire and attached to those articles; that they are used in all ways that beads are used; that his firm sometimes sells them to manufacturers, who use them as beads; that they are considered by, and used in, the trade as beads; and that they are used "more as" beads than as pendants or charms. The witness stated that, although his company usually used the involved articles in the making of necklaces, it sometimes used them as pendants on wristlets in the manner shown by Illustrative Exhibit B, which was introduced in evidence by the Government.

Illustrative Exhibit A, which was also identified by the witness, consists of a necklace composed of small white beads, probably mother-of-pearl, and three small, perforated, animal-shaped articles made of mother-of-pearl, for the purpose of illustrating how the involved articles are sometimes used.

Illustrative Exhibit B comprises a chain to which are attached four small articles somewhat similar to those here involved, except that they are made of glass. The articles so attached are called "pendants."

In concluding his testimony, the witness stated:

Judge McCLELLAND. Are the so-called "beads" represented by exhibit 1 used in any other way by you or your firm than as they appear here on illustrative exhibit A?

The WITNESS. Yes.

Judge McCLELLAND. Are they ever made into necklace form by themselves alone?

The WITNESS. No, sir.

Judge McCLELLAND. They are beads, or aren't they?

The WITNESS. Yes.

The Government introduced in evidence the testimony of two witnesses, Harris Levi and Jack Abramson.

The witness Levi testified that he was an importer of novelty jewelry and beads, and was connected with the firm of Ben Felsenthal & Co., of New York. He stated that, although he had never used nor seen mother-of-pearl articles like those here involved, he was familiar with glass articles of the same shape, which were used as pendants for necklaces or bracelets; that, when so used, they were not jewelry, unfinished; that in order to use them as pendants they were mounted on wire with a ring attached thereto; that, when so mounted, they were ready to be attached to necklaces or bracelets. He further stated that the imported articles were not used in the same way that beads were used, because, he said, a bead would not be used as an ornament. Thereafter, however, he stated that he had seen beads mounted on wire and used as ornaments or pendants in the same way that the involved articles are used. He further stated that the chief use, in his own particular business, of glass articles of the same shape of those here involved was as charms and pendants.

The witness Abramson testified that he had imported and sold articles similar in shape to the involved articles, except that those dealt in by him were composed of glass and gallilith, and that he had never seen articles of those shapes composed of mother-of-pearl. The witness was asked several questions by counsel for the Government, which were not permitted by the court to be answered. Whereupon, counsel for the Government stated that "In view of the objection being sustained, the Government is deprived of proving its case, and an exception is taken." At which point the Government rested without eliciting any information from the witness on the issues involved.

On this record, the trial court held that the involved articles were beads, and dutiable as such under paragraph 1503, *supra*, and, accordingly, sustained the protest.

It is here contended by counsel for the Government that the involved articles "are designed and definitely committed to be worn as 'jewelry' and in their imported condition are 'jewelry, unfinished,'" as assessed by the collector.

Although at the time of the oral arguments in this court, counsel for the Government suggested that the involved articles were not beads, no authorities were cited in support of that contention. Counsel then stated, in substance, that, assuming they are beads, they are parts of jewelry and are more specifically provided for as such under paragraph 1527 (a) (2), *supra*, than as beads, under paragraph 1503, *supra*. The question whether the involved merchandise could be considered under any circumstances as beads, was not raised nor discussed in the brief of counsel for the Government.

The contention made in the brief of counsel for the Government is that the involved articles are so "constructed" that they cannot be used for purposes other than as charms or pendants, and that, therefore, they are parts of jewelry, and dutiable as such under paragraph 1527 (a) (2), *supra*.

It appears from the record that neither of the witnesses for the Government had either dealt in or seen mother-of-pearl articles like those here involved. One of those witnesses, Abramson, gave no testimony relative to the involved issues. The other witness, Levi, stated that beads were frequently used as ornaments or pendants on articles of jewelry. He could not state, however, that the involved articles were parts of any article or articles.

The witness Gentile, who testified for the importer, stated that the involved articles were recognized in the trade as beads, and that they were used more as such than as pendants or charms, which statement we construe as meaning that they were chiefly used as beads.

That the provision for "beads" in paragraph 1503 was not intended to be limited to beads of any particular size or shape, is evident from the language of that paragraph. The statute contains the provision for "all other beads in imitation of precious or semiprecious stones, *of all kinds and shapes.*" (Italics ours.)

In the case of *United States* v. *Judae & Co.*, 13 Ct. Cust. Appls. 164, T. D. 41024, this court held that "crystal roundels or disk-shaped", perforated articles were dutiable as beads, although the question of whether they were, in fact, beads, was not raised in that case. It appears from the record that those roundels were flat and star-shaped, resembling, in appearance and size, the forget-me-not flower. See also Encyclopedia Britannica, 14 ed., vol. 3, p. 252.

We may say, however, that it is not our purpose here to define the term "beads", but rather to point out that the court would not be warranted in refusing to accept the testimony of the witness Gentile, solely because of the shape of the involved articles.

It may be, as argued by counsel for the Government, that the involved articles are parts of jewelry, nevertheless, they are, for the purposes of this case, beads, and are *eo nomine* provided for as such in paragraph 1503, *supra*. The provision for jewelry, finished or unfinished, and parts thereof, contained in paragraph 1527 (a) (2), *supra*, describes a large class of articles, and is obviously far more comprehensive and less specific than the provision for "beads", contained in paragraph 1503, *supra*. See *United States* v. *European Watch & Clock Co.*, 11 Ct. Cust. Appls. 363, T. D. 39160, where it was held that the provision for "watch movements, whether imported in cases or not, watchcases and parts of watches", contained

in paragraph 161 of the Tariff Act of 1913, more specifically provided for watch movements and watchcases, than did the provision for "Jewelry, commonly or commercially so known", contained in paragraph 356 of that act.

For the reasons stated, the judgment is *affirmed*.