(C. D. 1268)

L. HELLER & SON, INC. *v.* UNITED STATES

## United States Customs Court, First Division

(Decided August 22, 1950)

*John D. Rode* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

OLIVER, Chief Judge: This case is a retrial of the same issue previously heard and determined by this court wherein the importer's protest (121130–K) was sustained. (*L. Heller & Son, Inc.* v. *United States*, 17 Cust. Ct. 202, Abstract 51362.) The record in the previously decided case was, upon motion, received in evidence in the present case (R. 2).

The merchandise involved consists of so-called "tecali" stones imported from Mexico, which were assessed for duty under paragraph 1528, Tariff Act of 1930, at 60 per centum ad valorem as "imitation semiprecious stones, not faceted." The plaintiff has made several claims but relies principally upon the claim that the stones before us are dutiable under said paragraph 1528 as "semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry" at 10 per centum ad valorem.

In the present case the plaintiff did not offer any additional proof beyond that included in the incorporated record. The defendant introduced the additional testimony of two witnesses, one of whom, Ehrmann, had testified in the previous case.

In the incorporated record plaintiff introduced the testimony of three witnesses, duly qualified and experienced in buying and selling semiprecious stones. Their testimony established to our satisfaction that these "tecali" stones were bought and sold and known throughout the trade in the United States as semiprecious stones and that they were not bought and sold as imitations of any precious stones. We arrived at this conclusion upon the entire record, notwithstanding the fact that these stones in the condition in which imported had been colored before exportation and were described, when ordered, by such distinctive terms as cornelian, jade, or colored Mexican agates to indicate the color the purchaser desired in the finished product (R. 10, 36, protest 121130–K). These Mexican tecali stones are not manufactured from glass, paste, wood, plastic, or other material. They are natural mined stones stated to be of the agate family and sometimes referred to in the dictionaries as "Mexican onyx" (R. 22, protest 121130–K). The record also disclosed that these Mexican tecali stones have not the hardness, according to the authorities, of the better-known, admittedly semiprecious agate or onyx.

The fact that the tecali stone, when mined, is a dirty gray color

(collective illustrative exhibit 3, protest 121130–K; R. 23 of the present case), and is always dyed or colored before use does not negative the classification of such stone as a semiprecious stone. The record indicates that there is a large variety of natural stones which are habitually artificially colored and which are known or accepted in the trade as "semiprecious stones." The plaintiff's witness Heller testified that all onyx, for example, is artificially colored, as is chalcedony, chrysoprase, and many varieties of agate (R. 35, protest 121130–K). This testimony was substantiated in the present case by the Government's witness Hanauer who stated that agate and chalcedony are semiprecious stones and yet are nearly always dyed (R. 60–61).

We are satisfied from this record that the imported stones are not imitations of semiprecious stones, as there is nothing in the testimony of the witnesses or in an examination of the articles themselves which would indicate that they were intended to be imitations other than the fact that they have been dyed in various colors which could be roughly described by the color of other semiprecious stones, such as jade, cornelian, coral, etc. While the Government's witness Ehrmann stated the stones in question were not semiprecious stones because of their hardness (R. 47, protest 121130–K), it is significant that he did not testify that these stones were imitation, nor did he state that the stones were not semiprecious because they had been artificially colored. The sole question before us for determination, therefore, is whether or not these tecali stones are in themselves semiprecious stones.

The record appears to have established that three elements enter into a determination of whether or not a particular stone is or is not to be considered a semiprecious stone. These elements are: Beauty, rarity, and hardness. In the present case, the Government's witness Hanauer stated that beauty was largely a matter of personal taste (R. 51). The same witness stated that "All stones that are pretty and hard enough and rare enough to be used for jewelry, for us, are precious stones" (R. 44–45). We are of opinion that the stones in question are embraced within that definition. The merchandise before us is not the natural tecali stone as mined but consists of articles which have been cut and fashioned from the raw product and thereafter dyed or colored by some undisclosed process. The resulting imported article of commerce is a highly polished, colored article, clearly answering the first requisite of beauty as is apparent from the samples in evidence.

As to rarity, the record discloses that a hardness of 3 is typical of calcite, and the Government's witnesses have described the material in these stones as calcite, which they stated is a common mineral chiefly used for grinding up into powder form for use in the manufacture of steel as a flux (R. 48, protest 121130–K) or, after grinding, as a binder of some sort in the making of mortar for building material (R.

20, protest 121246–K). There is, however, no testimony in this record of these tecali stones (Mexican onyx or agate) being so used.

We are not satisfied upon the testimony in this record that these tecali stones, regardless of the fact that they have a hardness of only 3 or 4, are ordinary calcite, or that their chief use is in grinding up or being used for the purpose for which calcite is used. The record indicates that the stones in question are chiefly, if not entirely, used in the manufacture of jewelry. There is testimony that other stones, admittedly semiprecious, such as lapis lazuli, are very common and cannot by any extension of the term be described as rare. Coral, admittedly known as a semiprecious stone, is certainly abundantly available. The witness Hanauer conceded that the diamond is not rare and that its high market value stems from the fact that its production and marketing are controlled (R. 52–53). The Government's witness Ehrmann testified that quartz was a very common mineral but stated that it is used to a large degree for semiprecious stones (R. 31). We are not satisfied from this record that tecali stones are so common as to be deprived of the necessary element of rarity referred to by the witnesses.

In "Gem-Stones," G. F. Herbert Smith, 1930, 6th Edition, at page 288, we find:

The lovely blue stone known as *lapis lazuli* has since the earliest times been applied to all kinds of decorative purposes, for mosaic and inlaid work and as the material for vases, boxes, and so on, and was the original sapphire of the ancients. * * * Although to the eye so homogeneous and uniform in structure, *lapis lazuli* has been shown by microscopic examination to be composed of *calcite* coloured by three blue minerals in varying proportions. [Italics supplied.]

It is to be observed that lapis lazuli, though composed of calcite which is claimed to be the material of which the tecali stones are composed, is, nevertheless, regarded as a semiprecious stone.

There is a great deal of testimony in the record before us as to the *hardness* of these tecali stones. The various tests made in open court and the testimony of the witnesses as to the hardness of the imported tecali stones are of relatively no importance for the reason that counsel for the plaintiff at the end of the present case conceded that the imported stones have a hardness of 3 (R. 64). The testimony of the Government witness Ehrmann was to the effect that in order to be considered a semiprecious stone the article must have a hardness of 6 or higher. This position of the witness was adhered to notwithstanding the fact that coral, although not a mined product but one of animal origin, and lapis lazuli have a hardness of less than 6 but both are considered to be semiprecious stones. The witness admitted that there was no hide-bound rule about the hardness of a semiprecious stone (R. 28). There is also testimony in the present record that the pearl is also known as a precious stone but has a hardness of only 3 (R. 32). This testimony is not of great probative

value, as it is commonly known that the pearl is not a mined stone but is a gem. It is stated that if used for jewelry purposes these tecali stones, because of their low rating in the Moh's hardness test, would not stand up with wear (R. 25). However, the samples in evidence (plaintiff's exhibit 1-A, 1-B, 1-C, and 1-D, part of collective exhibit 1 in the incorporated case), are potent witnesses and would appear to be of sufficient hardness to be suitable for use in the manufacture of jewelry. The record is clear that they are so used. In Webster's New International Dictionary, Second Edition, 1948, page 2275, we find:

> **semiprecious** * * * Designating gem stones of less commercial value than those called precious, such as the amethyst, garnet, jade, and tourmaline; specif., *less than 8 in hardness*. [Italics supplied.]

The hardness test, while informative and helpful in determining whether or not a stone is semiprecious, is not conclusive. There is no fixed rule as to hardness (R. 28).

The defendant cites the decision of this court in *Cathay Crafts Corp.* v. *United States*, 6 Cust. Ct. 87, C. D. 434, where the involved merchandise consisted of articles composed of fluorspar. The court held the articles were not dutiable as composed of semiprecious stones and gave as one of the reasons to support its decision that fluorspar had a hardness of 4, which was less than the figure of 6 which the court accepted as the minimum standard for semiprecious stones. The court in its opinion also referred to the fact that Funk & Wagnalls New Standard Dictionary (page 2387), listing the commonly known precious, semiprecious, gem stones, and ornamental stones by name, did not include fluorspar in such list. It was observed, however, by the court that lapis lazuli and enstatite have a hardness of 5.5. The court took the position that under the ordinary definition of a semiprecious stone, fluorspar is excluded, and pointed out that the testimony of the Government's witnesses therein relative to the use of fluorspar carried little weight as no attempt had been made to prove a commercial designation different from the common meaning of the term. The court thereupon concluded that the facts substantiated the testimony of the plaintiff's witnesses that a stone, however ornamental, having a hardness of 4 is not a semiprecious stone. However, it is significant that in the list referred to by the court in the *Cathay* case, *supra*, Mexican onyx, while not listed under the heading of semiprecious stones, is listed and noted under the designation of ornamental stones. If it were listed generally as semiprecious stones, there would presumably be no issue before us. In the volume on "Gem-Stones," by G. F. Herbert Smith, previously referred to, we find, at page 287, that lapis lazuli is listed under the heading of ornamental stones. Lapis lazuli is regarded as a semiprecious stone and the references made by these authorities would indicate to us that a stone might be

designated as an ornamental stone and still be regarded and known as a semiprecious stone.

In the *Cathay* case, *supra*, it is to be observed that not a single piece of jewelry was produced as an exhibit at the trial. In the case at bar, however, we do have samples of the imported merchandise and the record definitely establishes that these tecali stones were suitable for use, and actually were used, as articles of jewelry.

In the present record, the defendant introduced the testimony of commercial witnesses to establish that these stones are not bought and sold as semiprecious stones, particularly the testimony of the witness Hanauer, who had not testified in the previous case. The additional testimony adduced on the part of the defendant herein does not warrant a holding different from that in the previously decided case.

Plaintiff's witnesses Bamberger and Heller, having many years' experience in the buying and selling of precious and semiprecious stones, and imitations thereof, and of the tecali stones before us, stated unequivocally that these stones are bought and sold in and known throughout the wholesale trade of the United States as semiprecious stones. They stated that they were not imitations of anything but were, in themselves, semiprecious stones. They testified that these tecali stones were purchased as semiprecious stones and offered and sold by the plaintiff to the trade as such (R. 8, 37); that these stones are genuine stones, colored (R. 11); that they are "agates in different colors" (R. 17); and "agate is a semiprecious stone" (R. 23).

In *Hahn* v. *United States*, 100 Fed. 635, the court stated, at page 636:

The undisputed facts of the case and prior decisions of the courts seem to lead to but one conclusion. This court held in Erhardt *v.* Hahn, 5 C. C. A. 99, 55 Fed. 273, that "undoubtedly, agate stones * * * are 'precious stones,' within the common acceptation of the term; certainly some varieties of them are; and, of course, they were known in trade and commerce and to lexicographers by that generic term." The board of general appraisers in the case at bar hold that agate is one of the precious stones. Indeed, no other conclusion was possible under the testimony, which showed that the term "precious stones" commercially embraced not only the diamond, sapphire, emerald, pearl, opal, and turquoise, but also the garnet, beryl, topaz, rock crystal, lapis lazuli, agate, onyx, jade, amethyst, tiger-eye, chalcedony, bloodstone, moonstone, tourmaline, chrysoprase, etc., and that in this enumeration agate by no means occupied the lowest place either in hardness, susceptibility to high polish, beauty, or rarity.

Plaintiff's third witness, having many years' experience in the lapidary field, likewise testified that the stones in question were semiprecious stones.

The testimony of the plaintiff's witnesses has not been successfully impeached by the witnesses called by the defendant. The most that can be said with respect to their testimony is that the witness Ehrmann, a mineralogist who had bought and sold precious and semiprecious stones in wholesale quantities, stated that in his opinion the imported

stones are not semiprecious stones (R. 23–24, protests 121246–K, etc.). The record fails to indicate, however, that this witness had ever bought or sold tecali stones like those in question. While this witness gave as his definition of a semiprecious stone one that has beauty, durability, or rarity, he admitted that he could not state if such definition was accepted in the trade (R. 45, protest 121130–K). Furthermore, this witness had not bought or sold or dealt much in imitations (R. 44). In the present case, defendant's second witness, Hanauer, testified that there are nó precious or semiprecious stones in collective illustrative exhibit 1, but that each one was an imitation of a precious stone, and stated that he was of this opinion because of "the color and somewhat the texture" (R. 61). This court has held that color by itself is not sufficient to constitute an imitation of a precious or a semiprecious stone. *United States* v. *Judge & Co.*, 13 Ct. Cust. Appls. 164, T. D. 41024. This same witness had never bought or sold tecali stones and admitted that he did not know how such stones were bought or sold in the trade (R. 60) but had seen them in the jewelry department of department stores.

We hold that the tecali stones before us are commonly known as semiprecious stones and that the plaintiff has established that they are known in the trade and commerce as semiprecious stones and bought and sold as such. They are also suitable for use in the manufacture of jewelry. The involved articles are properly dutiable, therefore, under paragraph 1528 of the Tariff Act of 1930 at the rate of 10 per centum ad valorem as "semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry," as claimed. The protests are sustained. As to all other claims the protests are overruled. Judgment will be entered accordingly.