(C. D. 1286)

BRIER MANUFACTURING Co. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 7, 1950)

*Isadore Paisner; Jacob L. Klingaman,* associate counsel, for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

OLIVER, Chief Judge: The merchandise before us consists of pear-shaped glass articles, faceted, which have been pierced through near the apex so that if strung or otherwise suspended they would hang or dangle. They were assessed for duty under paragraph 1503 of the Tariff Act of 1930 as "* * * beads in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material

composed" at 45 per centum ad valorem and are claimed properly dutiable under the provisions of paragraph 1528 as "* * * imitation semiprecious stones, faceted * * *" at 20 per centum ad valorem. It is conceded that the items in question are in imitation of semiprecious stones and are faceted.

The record before us consists of over 300 pages of testimony. Plaintiff introduced the testimony of five witnesses. Two witnesses testified for the Government. Both sides produced many exhibits in support of their contentions.

Without attempting to analyze in detail all the testimony, it may be said that the weight of plaintiff's evidence is to the effect that these articles are drops or pendants (the words are used interchangeably) (R. 69); that they are not ordinarily strung; that these drops or pendants are used almost exclusively in the manufacture of necklaces and earrings; and that while the hole drilled through the article near the apex makes it possible for them to be strung, they are actually used almost exclusively by inserting through the hole a wire known as a bale or baler, by means of which it is then attached to the finished article. Various exhibits are before us showing the imported articles in the condition in which imported (plaintiff's collective exhibits 1 and 2), and various articles of jewelry into which they are finally manufactured (plaintiff's collective illustrative exhibits A and 17). Plaintiff's contention is that a bead must be pierced through or near the center, either longitudinally or laterally for the purpose of stringing and that when strung the article will not hang or dangle as would be the case with a drop or pendant. It is further contended by plaintiff that such articles are not beads.

The Government in support of the collector's classification has introduced testimony to the effect that articles such as those before us are pendant beads and that they are properly dutiable as beads. Among the illustrative exhibits before us are certain articles (defendant's illustrative exhibits 10, 11, 12, 13) which were before us in the case of *Eitinger Bead Co., Inc.* v. *United States*, 8 Cust. Ct. 502, Abstract 47109 (illustrative exhibits B, C, D, A, respectively). In that case we held that these articles, used in connection with other items in the manufacture of necklaces and bracelets, and which were drilled off center so that they dangled, were properly dutiable as beads.

The testimony of the witnesses in support of the contentions of both parties to this litigation is contradictory, as is usually the case. Although the general question of beads has been before us on many occasions, it is difficult, if not impossible, to give an all-inclusive definition of a bead. Some of the dictionary definitions of beads are:

Encyclopaedia Britannica, 1947 ed.: **Beads.** The word bead is derived from the Saxon verb "biddan," to pray; originally associated with the "beads" on a rosary, it has now been extended to mean almost any pierced object which can be strung. Their great diversity of form, portability and lasting power make

beads one of the most valuable articles for tracing the influence of nation upon nation even back to the times of which no written records exist.

**Bead Manufacture.** A bead is a small globule or ball used in necklaces, etc., and made of a great variety of materials.

Webster's New International Dictionary, Second Edition, 1948: **bead. n.** * * * **2. a** A small perforated ball strung with others, and used for counting prayers, as in a rosary; hence, *pl.,* the (or a) rosary; as, to say the *beads,* to bless *beads.* **b** A similar ball or polyhedron used on fabrics or as jewelry in strings;— exp. in *pl.;* as, *beads* and girdles gay. **3.** Any small globular body; as * * *.

Funk & Wagnalls New Standard Dictionary of the English Language, 1942 ed.: **bead, *n.* 1.** A little perforated sphere, ball, cylinder, or the like, usually strung on a thread or attached to a fabric for decoration.

In the Summary of Tariff Information, 1929, on the Tariff Act of 1922, we find at page 1896:

BEADS IN IMITATION OF PRECIOUS AND SEMIPRECIOUS STONES

**Description and uses.**—Beads in imitation of precious and semiprecious stones are made of glass, paste, and other materials. They are used in the make-up of necklaces, *pendants,* bracelets, items of jewelry, and other articles of adornment. [Italics ours.]

The Dictionary of Tariff Information, published in 1924, states (p. 63): "For tariff purposes beads must be round or spheroid." This is obviously not controlling today, as this record makes it clear that beads may be in many shapes.

Plaintiff's witness Greenberg stated that he had seen beads pierced off center so that if strung they would dangle (R. 73–74). He had also seen small quantities of such beads strung in Czechoslovakia (R. 81). He also stated as to the article before us (collective exhibit 1) that if the hole ran through from top to bottom, the article would be a bead (R. 100); if the article had no hole at all it would be an imitation faceted stone (R. 97); and if it had a hole running into it but not entirely through, or if the hole went entirely through near the top, as in collective exhibits 1 and 2, it would be a pendant (R. 97, 106). Plaintiff's witnesses further testified that beads can be of many shapes other than round (R. 108, 171).

It is clear from this record that the imported articles are capable of being strung (R. 31–32). The perforation goes completely through the article. It also appears that beads are sometimes pierced off center so that they hang or dangle (R. 73–74, 77). The court asked one of plaintiff's witnesses (R. 142):

CHIEF JUDGE OLIVER: Am I correct in understanding your testimony to be because these are pierced at the apex and dangle when used in their ultimate use that therefore, for that reason, they are not beads?

THE WITNESS: That is correct.

and (R. 143–144):

CHIEF JUDGE OLIVER: Therefore, am I correct in understanding that, based upon your experience, if the article is pierced through, it is a bead, that is, other than at the apex?

THE WITNESS: Other than at the apex, it is a bead. Let me say, if the gravity of the situation would force it to drop or dangle, you would get a pendant or a drop.

CHIEF JUDGE OLIVER: So, then, you distinguish between the piercing throughout and add to that that if the hole is in such a position that the article, when finally prepared as a merchandising item, dangles, then it is not a bead?

THE WITNESS: That is correct.

The foregoing can be said to fairly state the plaintiff's position.

Government's witness Eitinger testified that articles like collective exhibits 1 and 2 are beads (R. 250) and that it does not make any difference whether the perforation is at the top, bottom, middle, or at the axis (R. 259). Government's witness Rosenberg testified that he had seen articles similar to collective exhibits 1 and 2 strung commercially but not often (R. 288–289).

It seems reasonable to conclude from this record that (1) beads are made in many sizes and shapes and from various materials; (2) that all beads are perforated; (3) that the articles before us are pear-shaped, are in imitation of precious or semiprecious stones, are faceted, and have been pierced through at or near the apex; (4) that they are capable of being strung and in some cases are strung, but they are chiefly used with wire as drops or pendants in the manufacture of necklaces and earrings; (5) that after importation they usually are hung by means of a wire bale or baler inserted through the hole in the article; and (6) that when finished into the completed article of commerce, they hang or dangle.

There is no claim that the term "beads," as applied to the articles before us, has a different meaning in the trade from the common meaning of the term. We, therefore, are called upon to determine whether or not these pear-shaped glass articles, pierced with a hole near the apex or top, capable of being strung but in practice usually fastened to a completed article by wires, are beads. The master rule of construction in this court is to ascertain the intent of Congress. *United States* v. *Clay Adams*, 20 C. C. P. A. 285, 288, T. D. 46078; *United States* v. *Stone & Downer*, 274 U. S. 225. The Tariff Act of 1909 provided for beads in paragraph 421 as beads and spangles of all kinds, including imitation pearl beads, not threaded or strung, or strung loosely on thread for facility in transportation only. This same language was carried forward and incorporated in the provisions of paragraph 333 of the Tariff Act of 1913. Thereafter, this provision was amplified in paragraph 1403 of the Tariff Act of 1922 and, after specifically providing for spangles and beads, including bugles, etc., there appeared for the first time a provision for "all other beads in imitation of precious or semiprecious stones, of all kinds and shapes, or whatever material composed, strung or loose, mounted or unmounted." This provision was carried forward into paragraph 1503 of the Tariff Act of 1930. It will be assumed that Congress did not

make this change without a reason. It seems fair to assume that the change in language, as set forth above, was to enlarge and broaden the scope of the types of beads intended by Congress to be covered under this blanket provision. There is nothing in the provisions of the tariff act, nor in the definitions of beads, to which our attention has been directed, which indicates any specific point at which the hole or perforation should appear in a bead. It does seem clear that to come within the definition of a bead the article must be perforated and be capable of being strung.

It is the contention of the plaintiff that the use of these articles determines their classification and that as they are not usually strung they are not beads. With this contention we are not in agreement. The provision for beads in paragraph 1503 is not based on use.

It is the general rule in customs litigation that it is the condition of the merchandise at the time of importation that controls its classification, not what it is made into after importation (*Leonard Levin Co.* v. *United States*, 27 C. C. P. A. 101, C. A. D. 69).

In the *Levin* case, *supra*, the court, in its opinion at pages 105–106, said:

> Another case cited by appellant is that of *Vandegrift & Co.* v. *United States*, 15 Ct. Cust. Appls. 165, T. D. 42221, which arose under the Tariff Act of 1922. This seems to be cited in support of the contention that "The use to which beads are put after importation is not immaterial," and for the purpose of challenging the correctness of the trial court's holding that "It is the condition of merchandise as imported that controls its classification, not what it is made into after importation."

> That the rule stated by the trial court is the correct rule generally is so well known that no authorities in support of it need be cited. There was no departure from it in the *Vandegrift & Co.* case, *supra*. In describing the merchandise there involved, its use after importation was stated as incidental to the description of its inherent character. The same was true in the *Judae & Co.* case, *supra*.

> Exceptions to the general rule may be required with respect to merchandise, the classification of which is, by the *statute* [italics ours], made dependent upon use. Otherwise, the general rule applies. We find nothing in paragraph 1503 of the Tariff Act of 1930, *supra*, which requires or would justify the classification of the beads here involved, being made dependent upon their use after importation.

Applying that reasoning to the present case, the question of whether or not these articles are beads will not depend upon their use after importation. As collective exhibits 1 and 2 are perforated, thus making them adaptable to being strung, the fact that they are chiefly used with a wire baler after importation does not determine their dutiable status.

Congress, in paragraph 1503 of the Tariff Act of 1930, used unusually broad language when it provided for "* * * all other beads in imitation of precious or semiprecious stones, *of all kinds and shapes, of whatever material composed* * * *." [Italics supplied.] There is no provision in the tariff act for pendants or drops.

In *Oval Manufacturing Co.* v. *United States*, 62 Treas. Dec. 563, T. D. 46008, the articles before the court were small elephants made of red glass in imitation of coral, pierced with a hole through which they could be strung. The issue there was between the colored-glass-article provisions of paragraph 218 (f) of the Tariff Act of 1930 and the bead provisions in paragraph 1503. They were described on the invoice as "coral imit. Pendants w. hole." We understand this to mean "imitation coral pendants with hole." This court, on the record in that case, held these small elephants dutiable as beads.

Certain heart-shaped and tapering articles with holes at the top, so situated that when strung or otherwise attached to an article of commerce they would hang or dangle (illustrative exhibits 10, 11, 12, and 13), were held to be beads. (*Eitinger Bead Co., Inc.* v. *United States*, 8 Cust. Ct. 502, Abstract 47109.)

In *General Transport Co.* v. *United States*, 64 Treas. Dec. 555, T. D. 46744, the merchandise consisted of small animals with a single hole perforated through the body and usually attached to the finished article of commerce with a wire and a ring. They were known, and used, as charms or pendants to hang on necklaces or bracelets. As imported, the articles, while pierced, had not as yet had a wire inserted. This was done after importation, as in the present case. This court, in an opinion by Sullivan, J., stated: "Originally, in their imported condition, they are beads." The court so held even though they were not ordinarily strung and if strung would hang in an awkward or unnatural position. This decision was affirmed on appeal (*United States* v. *General Transport Co.*, 22 C. C. P. A. 446 (Customs), T. D. 47440). It should be noted, however, that in affirming the decision of this court, our appellate court stated (p. 448):

\* \* \* The question whether the involved merchandise could be considered under any circumstances as beads, was not raised nor discussed in the brief of counsel for the Government.

The plaintiff herein in support of its contention that the involved articles are properly dutiable as imitation semiprecious stones directs our attention to *Theo. L. Stern & Co.* v. *United States*, 59 Treas. Dec. 1659, Abstract 15786. In that case, the uncontradicted testimony of the plaintiff's witness was to the effect that the merchandise represented by exhibits 1, 2, 4, and 5, there under consideration, was "used as pendants in jewelry and so forth," which he specified as "earrings and sometimes in necklaces" and that such exhibits imitated precious or semiprecious stones. Upon such testimony, the court held the merchandise represented by exhibits 2, 4, and 5 dutiable as imitation precious or semiprecious stones under paragraph 1429 of the Tariff Act of 1922. The witness in the *Stern* case, *supra*, further testified

that exhibit 1 "is a jet pendant," and that it was sometimes known in the trade and classified under the heading of beads. The record indicated that this article was somewhat of the shape of an elongated pyramid, with the apex removed, making it flat on top as well as at the bottom. A hole was pierced through the article from end to end. The court therein stated:

Inasmuch as the testimony shows the merchandise represented by Exhibit 1 to be not only an imitation precious or semiprecious stone, but also a bead, we hold it dutiable under the provision in paragraph 1403 for "beads in imitation of precious or semiprecious stones," * * *.

It will be observed, therefore, that the article in the *Stern* case, *supra*, which was stated to be a jet pendant, was held to be a bead.

It appears from the record in the present case that the imported articles are usually bought and sold as drops or pendants. The issue before us is whether such drops or pendants are included under the general description of "beads * * * of all kinds and shapes * * *" in paragraph 1503.

In the condition in which imported, without wires and not strung, the articles here before us were classified by the collector under the provisions of paragraph 1503 as beads. This classification is presumed to be correct. By its protest the plaintiff has assumed the burden of not only establishing that the collector's classification is wrong but in addition that its own claim is correct. This it has failed to do. The articles before us conform to the common definition of beads. They are pierced and capable of being strung and in some instances appear to have been actually strung commercially. It appears that they are chiefly used with a wire baler by means of which they are attached to the finished articles, usually earrings or necklaces. As heretofore stated, chief use after importation is not controlling. In the condition in which imported they are properly dutiable as beads, as classified by the collector.

One further claim is made by the plaintiff in support of its protest. It is contended that as similar merchandise was, for many years, uniformly assessed with duty as imitation precious stones, faceted, that this present classification is a change of long-continued administrative practice and, therefore, improper.

In support of this contention plaintiff directs our attention to the decision of our appellate court in *Osceola Mill & Elevator Co.* v. *United States*, 11 Ct. Cust. Appls. 139, T. D. 38938. In that case the court stated (pages 142–3):

* * * the long-continued and unquestioned departmental classification of this product as rye flour for tariff purposes, which classification itself does not appear to be arbitrary or unreasonable, and the implied approval and adoption

thereof by Congress in the reenactment of the applicable provisions of the law in essentially similar terms, should have the effect and consequence of establishing the status of the article for tariff purposes and this should prevail until changed by legislative action.

The situation here before us, however, is distinguishable from that which prevailed in the *Osceola* case, *supra*. Section 16.10 of the Customs Regulations of 1943 provides in part:

(*a*)  If there is an established and uniform practice at the various ports, a change in classification resulting in a higher rate of duty, *except as a result of a court decision*, shall be made only upon the Bureau's instructions  *  *  *. [Italics supplied.]

*       *       *       *       *       *       *

(*d*)  The principles of decisions of the United States Customs Court or the United States Court of Customs and Patent Appeals favorable to the Government shall be applied to merchandise identical with that passed on by the court,  *  *  *.

The classification of the merchandise before us as beads in imitation of precious or semiprecious stones was predicated upon this court's decision in *Eitinger Bead Co., Inc.* v. *United States*, decided April 22, 1942 (Abstract 47109). The primary question presented in the *Eitinger* case, *supra*, was whether or not the pendant-like articles there in question were beads and dutiable as such. The same issue is before us in the present case. In the *Eitinger* case, *supra*, we found and held that the involved articles fell within the dictionary definitions of "beads." In the course of our opinion therein, we stated that perforations in beads penetrate through the article and that they are not limited to number or location.

The only evidence in the present record as to a long-continued administrative practice is to the effect that since approximately 1931, with the exception of the war years (1939–1946), articles similar to those before us were uniformly classified for duty under paragraph 1528 as "  *  *  *  imitation semiprecious stones, faceted  *  *  *." As will be noted in section 16.10 of the Customs Regulations of 1943, *supra*, the exception to the rule that a change in established uniform practice shall be made only upon the Bureau's instructions is where the change of classification resulting in a higher rate of duty is, *as here*, the result of a court decision. The action of the collector in assessing these articles for entry as beads does not violate any settled rule of administrative practice and is in conformity with a decision of this court.

The articles before us are beads in imitation of semiprecious stones, faceted, and as such are properly dutiable at 45 per centum ad valorem under the provisions of paragraph 1503 of the Tariff Act of 1930. The protests are overruled and the classification of the collector is sustained.