BRIER MANUFACTURING Co. *v.* UNITED STATES (No. 4667)[1]

United States Court of Customs and Patent Appeals, November 7, 1951

*Isadore Paisner* and *Jordan & Klingaman* (*J. L. Klingaman* of counsel) for appellant.

*David N. Edelstein*, Assistant Attorney General (*Joseph F. Donohue* and *Richard F. Weeks*, special attorneys, of counsel), for the United States.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY; Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the First Division of the United States Customs Court, entered in conformity with its decision,

---

[1] C. A. D. 465.

C. D. 1286, 25 Cust. Ct. 197, respecting the classification of, and duty assessment upon, certain imported merchandise hereinafter described.

The importations are subject to the provisions of the Tariff Act of 1930.

Numerous protests involving the same general issue being before the Customs Court, the cases were consolidated for trial and disposed of in a single decision and judgment.

The merchandise was entered at the port of New York City. It is stated in the memorandum of the Collector of Customs transmitted to the Customs Court that the appraiser's description of the merchandise was accepted and adopted in liquidation and that the merchandise "was accordingly classified as beads in imitation of precious or semi-precious stones at 45% under paragraph 1503 of the Tariff Act of 1930."

The full text of paragraph 1503, which is commonly referred to as the "bead paragraph," reads:

PAR. 1503. Spangles and beads, including bugles, not specially provided for, 35 per centum ad valorem; beads of ivory, 45 per centum ad valorem; fabrics and articles not ornamented with beads, spangles, or bugles, nor embroidered, tamboured, appliquéd, or scalloped, composed wholly or in chief value of beads or spangles (other than imitation pearl beads, beads in imitation of precious or semiprecious stones, and beads in chief value of synthetic resin), 60 per centum ad valorem; hollow or filled imitation pearl beads of all kinds and shapes, of whatever material composed, 60 per centum ad valorem; imitation solid pearl beads, valued at not more than one-fourth of 1 cent per inch, 60 per centum ad valorem; valued at more than one-fourth of 1 cent and not more than 1 cent per inch, one-half of 1 cent per inch and 60 per centum ad valorem; valued at more than 1 cent and not more than 5 cents per inch, 1 cent per inch and 40 per centum ad valorem; valued at more than 5 cents per inch, 60 per centum ad valorem; iridescent imitation solid pearl beads, valued at not more than 10 cents per inch, 90 per centum ad valorem; valued at more than 10 cents per inch, 60 per centum ad valorem; beads composed in chief value of synthetic resin, 75 per centum ad valorem; all other beads in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material composed, 45 per centum ad valorem: *Provided*, That the rates on spangles and beads provided in this paragraph shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted: *Provided further*, That no article composed wholly or in chief value of any of the foregoing beads or spangles shall be subject to duty at a less rate than is imposed in any paragraph of this Act upon such articles without such beads or spangles.

It will be observed that the paragraph has twelve clauses preceding the provisos, each clause being complete in itself and independent of the others.

The third clause is a "beaded fabric" and "beaded article" clause.

Each of the other clauses provides for a particular kind, or class, of beads.

The clause of interest here is the twelfth—the last one appearing

before the first proviso—under which, obviously, the collector's classification was made.

The claim relied upon by the importer is that the merchandise "should have been and should be classified as imitation precious or semi-precious stone, faceted, at twenty per centum ad valorem under the provisions of paragraph 1528 of the Tariff Act of 1930."

Paragraph 1528 is, as stated in the brief for the Government, a "jewelry material paragraph"; that is, it covers materials used in the manufacture of jewelry. It reads:

PAR. 1528. Pearls and parts thereof, drilled or undrilled, but not set or strung (except temporarily), 10 per centum ad valorem; diamonds, coral, rubies, cameos, and other precious stones and semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry, 10 per centum ad valorem; imitation precious stones, cut or faceted, imitation semiprecious stones, faceted, marcasites and imitation marcasites, imitation half pearls, and hollow or filled imitation pearls of all shapes, without hole or with hole partly through only, 20 per centum ad valorem; imitation precious stones, not cut or faceted, imitation semiprecious stones, not faceted, imitation jet buttons, cut, polished or faceted, imitations of opaque precious or semiprecious stones, with flat backs and tops, cut and polished, but not faceted, 60 per centum ad valorem; imitation solid pearls and iridescent imitation solid pearls, unpierced, pierced or partially pierced, loose, or mounted, of whatever shape, color, or design, shall bear the same rate of duty as is applicable under paragraph 1503 to beads of the same character.

It will be observed that the paragraph has five clauses, each clause being complete in itself and independent of the others.

The clause of interest here is the third which contains the phraseology "imitation precious stones,   *   *   *   faceted, imitation semiprecious stones, faceted   *   *   *   20 per centum ad valorem."

As a matter of fact, the decision of the Customs Court states:

*   *   *   It is conceded that the items in question are in imitation of semiprecious stones and are faceted.

So, the issue here actually is narrowed to "semiprecious" stones so far as the claim of the importer is concerned.

The Customs Court overruled the protests embracing the importer's claim and expressly sustained the classification and duty assessment of the collector.

In its decision, the Customs Court stated that the classification made by the collector was predicated upon a prior decision rendered by it April 22, 1942, in the case of *Eitinger Bead Co.* v. *United States,* 8 Cust. Ct. 502.

There was no appeal from that decision and the only information we have concerning the case is that set forth in the decision itself, which, like the decision in the instant case, was rendered by the First Division.

It is stated in the court's decision in that case that the collector had classified the merchandise as "imitation semiprecious stones, not

faceted, at 60 per centum ad valorem under paragraph 1528, Tariff Act of 1930."

Such classification obviously was made in the belief that the merchandise fell within the meaning of the *fourth* clause of paragraph 1528, *supra*, since that is the only clause of the paragraph that covers articles *not faceted*.

As has been stated, *supra*, the claim of the importer in the instant case obviously is based upon the *third* clause of paragraph 1528, *supra*, which is the only clause of the paragraph that provides for *faceted* articles.

It may be noted at this point that the word "faceted" does not appear in paragraph 1503, *supra*—the bead paragraph.

Also, it may be noted that all the articles provided for in paragraph 1503, *supra*, are finished articles, while those provided for in paragraph 1528, *supra*, are articles which customarily are used in the manufacture of jewelry.

Another statement in the court's decision in the *Eitinger Bead Co.* case, *supra*, is that the items there in question were "composed of imitation semiprecious stones." In refusing to approve the collector's classification, however, the court did not make any express finding as to whether the stones were faceted or not faceted.[1]

We do not regard the decision in that case as controlling here.

Just here seems an appropriate point at which to comment upon another decision of the Customs Court, rendered December 22, 1926, because it is cited in the brief for the Government in support of a contention that there has been legislative ratification of a judicial determination which should control the decision in the instant case.

The case arose under the Tariff Act of 1922 and the decision cited is embodied in Abstract 1555, reported in 50 Treas. Dec. at page 817.

It appears that certain protests by "A. Kriloff & Co. (Chicago)" were there involved.

The abstract decision begins:

BEADS—PENDANTS.—The question in this case is *under which provision of paragraph 1403*, tariff act of 1922, certain beads or pendants are dutiable. (The italics are ours.)

The decision reads:

* * * The merchandise was invoiced as pendants. The official sample was found to consist of two pear-shaped drops each pierced longitudinally by a small hole, one being of clear uncolored glass or paste and the other of red glass or paste, both samples being faceted. Upon the record presented, which tended to indicate that the collector was correct in his classification at 45 per cent ad valorem rather than to overcome it, the protests were overruled. G. A. 8848 (T. D. 40385) affirmed in *United States* v. *Judae* (13 Ct. Cust. Appls. 164; T. D. 41024) cited.

[1] While the court sustained the claim of the importer as to classification under the bead paragraph (1503, *supra*) and refused to approve the collector's classification under the jewelry material paragraph (1528, *supra*), it held, in substance, that it had not been established that the items were not specifically provided for elsewhere in the bead paragraph, meaning, we suppose, elsewhere than in the twelfth clause thereof, and hence denied the importer judgment for any portion of the duties assessed.

It will be observed that the decision does not specify the clause nor does it indicate the phraseology of paragraph 1403 of the 1922 act upon the basis of which the protests were predicated, but it is clear from the court's statement of the question that it was not called upon to consider the application of any paragraph other than paragraph 1403.

Paragraph 1403 of the Tariff Act of 1922 constituted the "bead paragraph" of that act just as paragraph 1503 of the 1930 act constitutes the "bead paragraph" of the latter act.

There are differences between the two paragraphs which are not vital here.

As stated in the brief before us on behalf of the Government, the decision in the *Kriloff & Co.* case, *supra*, was cited in the Summary of Tariff Information, 1929 (Vol. 2, page 1901) prepared by the Tariff Commission for the use of the Ways and Means Committee of the House of Representatives in the preparation of the measure which became the Tariff Act of 1930, and it is claimed in the brief that the proceeding constitutes "a perfect case of legislative ratification of the decision * * * and it should be held, as a matter of law, that paragraph 1503 of the Tariff Act of 1930 was intended by Congress to include pendants and drops."

We do not find that decision alluded to in the decision of the Customs Court in the instant case, and we assume that the Government's presentation of it was made for the first time before us, but whatever may be the situation in that regard, we are unable to agree with the Government's contention respecting the controlling force of the decision. If a claim under paragraph 1429 had been involved there and specifically passed upon by the Customs Court, the situation might be different, depending, of course, upon what other facts might appear, but no such claim was there made.

For half a century or more customs litigation has been replete with judicial decisions respecting the proper classification, under different tariff acts, of beads and materials of which beads are made, and of jewels, jewelry, and articles used or suitable for use in the manufacture of jewelry. The respective fields are so broad and the varieties of items in such fields are so numerous that classification of particular items often has presented the administrative officials and the courts with puzzling queries difficult to answer.

The question posed here, in our opinion, presents a query of that nature.

So far as we have been able to determine from an examination of the cases cited by the Customs Court and those cited in the briefs on behalf of the respective parties, there has been no decision which fairly may be regarded as controlling here.

The testimonial record covers approximately two hundred printed pages and numerous physical exhibits were placed in evidence. Five witnesses were called on behalf of the importer and two on behalf of the Government.

In our opinion, there was no material discrepancy in the testimony respecting the form, the inherent nature, the quality, and the use of the articles at issue. In other words, there was no material disagreement as to *facts*, but the *opinions* of the witnesses called by the importer and those called by the Government differed as to whether the items are "beads" within the common meaning of that term, or "imitation semiprecious stones faceted" such as are provided for in the third clause of paragraph 1528, *supra*.

It may be said that each of the witnesses in the case seems to have been well qualified to testify concerning the bead business and also concerning jewelry and the materials which enter into its manufacture—particularly into the manufacture of what, throughout the record, is referred to often as costume jewelry.

In this connection, it may be said that there is no question of commercial designation, as distinguished from the common meaning, of any of the terms here involved. Also, it is true as a matter of law that opinion evidence is not binding upon the courts, but it is not improper to introduce it, and often it is helpful to the courts in determining common meaning.

The Customs Court, saying, "Although the general question of beads has been before us on many occasions, it is difficult, if not impossible, to give an all-inclusive definition of a bead," quoted some dictionary definitions of the term, briefly reviewed portions of the testimony, described such of the exhibits as it deemed important, and declared:

It seems reasonable to conclude from this record that (1) beads are made in many sizes and shapes and from various materials; (2) that all beads are perforated; (3) that the articles before us are pear-shaped, are in imitation of precious or semiprecious stones, are faceted, and have been pierced through at or near the apex; (4) that they are capable of being strung and in some cases are strung, but they are chiefly used with wire as drops or pendants in the manufacture of necklaces and earrings; (5) that after importation they usually are hung by means of a wire bale or baler inserted through the hole in the article; and (6) that when finished into the completed article of commerce, they hang or dangle.

The court said further:

There is no claim that the term 'beads,' as applied to the articles before us, has a different meaning in the trade from the common meaning of the term. We, therefore, are called upon to determine whether or not these pear-shaped glass articles, pierced with a hole near the apex or top, capable of being strung but in practice usually fastened to a completed article by wires, are beads. The master rule of construction in this court is to ascertain the intent of Congress. * * *

Definitions quoted in the court's decision are as follows:

Encyclopaedia Britannica, 1947 ed.: Beads. The word bead is derived from the Saxon verb 'biddan,' to pray; originally associated with the 'beads' on a rosary, it has now been extended to mean almost any pierced object which can be strung. Their great diversity of form, portability and lasting power make beads one of the most valuable articles for tracing the influence of nation upon nation even back to the times of which no written records exist.

Bead Manufacture. A bead is a small globule or ball used in necklaces, etc., and made of a great variety of materials.

Webster's New International Dictionary, Second Edition, 1948: bead. n. * * * 2. a A small perforated ball strung with others, and used for counting prayers, as in a rosary; hence, *pl.*, the (or a) rosary; as, to say the *beads*, to bless *beads*. b A similar ball or polyhedron used on fabrics or as jewelry in strings;— exp. in *pl.*; as, *beads* and girdles gay. 3. Any small globular body; as * * *. [Italics quoted.]

Funk & Wagnalls New Standard Dictionary of the English Language, 1942 ed.: bead. *n.* 1. A little perforated sphere, ball, cylinder, or the like, usually strung on a thread or attached to a fabric for decoration.

In the brief for appellant other definitions are given as follows: New Oxford Dictionary—

A small perforated body, spherical or otherwise of glass, amber, metal, wood, etc., used as an ornament, either strung in a series to form a necklace, bracelet, etc., or sewn upon various fabrics.

New International Encyclopedia—

A variety of personal ornament, made of various materials, as glass, pottery, metal, bone, ivory, wood, jet, amber, coral, etc., and perforated so that it can be strung on threads, and made into necklaces, bracelets, rosaries, etc., or work on cloth as a kind of embroidery.

Another quotation from the brief for appellant reads:

The Encyclopedia Britannica makes no attempt at precise definitions, but in the 1947 Edition there is appended to the article on Beads a bibliography which refers to an article covering in detail the specific problem involved in this case, 'Classification and Nomenclature of Beads and Pendants', by H. C. Beck, ARCHAEOLOGIA, Volume 77 (1927). On page 11 of this article the author points out most clearly and with peculiar applicability to the facts of the instant case the distinction between beads and pendants.

'* * * It is almost impossible to draw a hard and fast line between what is a bead and what is a pendant. In many cases an exactly similar object becomes a definite bead or a definite pendant *according to its perforation.* For instance, an olive shell perforated along the axis is a bead, whilst the same shell perforated at one end is a pendant.' (Italics ours.)

The court's decision also refers to the 1929 Summary of Tariff Information, *supra*, in which, at page 1896 of Volume 2, it is said, relative to description and uses of beads in imitation of precious stones:

* * * [They] are made of glass, paste, and other materials. They are used in the make-up of necklaces, *pendants*, bracelets, items of jewelry, and other articles of adornment. (The italics were supplied by the Customs Court.)

We do not think the matter quoted from the Summary of Tariff Information lends support to the conclusion of the Customs Court that the articles here involved are beads.

The fact that beads may be "used in the make-up" of necklaces, pendants, and bracelets does not mean that the necklaces, pendants, and bracelets in which they are used become beads within the meaning of paragraph 1503, *supra*. "Items of jewelry and other articles of adornment," obviously, is a broad expression which is of no aid in construing the statutes.

So far as we have been able to find, the word "pendant" is not used anywhere in the Tariff Act of 1930, nor is the word "necklaces." The word "bracelets" is used only in paragraph 1527 (c) of the act where provision is made for "watch bracelets"—a provision which has no relevancy here.

The following are the pertinent definitions given by lexicographers of the word "pendant":

Webster's New International Dictionary

pendant n. * * * 1. Something which hangs or depends; something suspended; a hanging appendage, esp. an ornamental one, as to a chandelier or to an earring. * * *

Funk & Wagnalls New Standard Dictionary of the English Language

pendant n. 1. Anything that hangs or depends from something else, either for ornament or for use, as an earring or a tassel. 2. Something attached to another thing as an ending; an appendix. * * *

Pendants, ornamental in character, of course, are well known articles suitable for use in making jewelry. The term "drop" is, as stated in the decision of the Customs Court, used interchangeably with the term "pendant."

The articles before us are actual "imitation semiprecious stones" which have been faceted. As completed articles of adornment they are not "*in* imitation of semiprecious stones"; they are *per se* "imitation semiprecious stones." While there may be "pendant beads," as one of the witnesses for the Government testified, it does not follow that every "pendant" is a "bead."

The great weight of the evidence in this case, we think, is in agreement with the descriptive matter hereinbefore quoted from the article in the Encyclopedia Britannica distinguishing between beads and pendants by the location of the perforations in them.

Having this view, we feel constrained to disagree with the conclusion of the Customs Court.

The judgment is *reversed* and the case will be *remanded* for further procedure in conformity herewith.