**No. 57261.**—Samco, Inc. *v.* United States, protest 182244-K (New York).

OLIVER, Chief Judge: This case relates to merchandise described on the invoice as "Hot Plate Mats from Wood," which was classified as articles in chief value of beads under paragraph 1503 of the Tariff Act of 1930, as modified by T. D. 51802 and T. D. 51898, carrying a dutiable rate of 30 per centum ad valorem. Plaintiff seeks classification as manufactures of wood, not specially provided for, under paragraph 412, as modified by T. D. 51802, with a duty assessment of 16⅔ per centum ad valorem.

There are four items in question. Samples of them are in evidence (plaintiff's exhibits 1, 2, 3, and 4).

The invoice item described as "art 7" is a flat wooden article, approximately 6⅝ inches square, three-sixteenths of an inch in thickness, and composed of various specially shaped pieces of highly polished maple. Some of the wooden pieces are of natural color and others are painted red. Collectively, there are four different shapes, arranged to form a geometric design. Some of the pieces are grooved to

receive protruding wings of odd-shaped pieces centrally located in the finished article. All of them are perforated in such a way that with the use of a thread, as a binding agent, they are connected to form a highly decorative article of commerce (plaintiff's exhibit 1).

The article represented by the invoice item "art 6" is composed of natural and colored, irregularly shaped pieces of wood (beech and maple) that are joined together to form a decorative mat, 6¾ inches square and three-sixteenths of an inch in thickness. The finished article is made up of six odd-shaped pieces, all perforated in two or more places. The perforations are located to permit the various pieces being threaded and held together in a definite arrangement, forming a decorative geometric design. The pieces making up the outer edges are grooved so that when the binding thread is introduced, the thread will lie within the groove and not appear outside the article (plaintiff's exhibit 2).

The item described on the invoice as "art 22901/4/30" consists of nine square pieces made of maple and beech. Five of the pieces are in natural color and four have been painted blue. Each piece measures approximately 1⁹⁄₁₆ inches square and three-sixteenths of an inch in thickness. All are perforated through the center on each of the four sides. In addition, the outside edges are grooved to hold a thread that connects all of the pieces together. The thread rides inside the grooves on outside pieces and does not project beyond the article itself. Four of the natural pieces, forming the four corners, have colored symbols thereon, indicating the use of the article as a coaster on a card table. The other natural-colored piece, appearing in the center of the article, has no symbol (plaintiff's exhibit 3).

The article described on the invoice as "art 51213" is composed of 24 diamond-shaped pieces of highly polished wood (beech). Sixteen of the pieces are colored red and form the outside of the article. The remaining eight pieces, in the center, are of natural color. Each individual piece measures 2½ inches in length, 1 inch in width, and one-quarter of an inch in thickness. All of them are perforated at four different points, near the apex and at both ends. They are connected by means of a binding thread so that the entire arrangement completes a geometric design, with the finished article measuring about 7½ inches in diameter (plaintiff's exhibit 4).

The sole question before us is whether or not the wood components, forming the basic construction of the imported articles, are beads. If they are, the collector's classification is sustained. If they are not, the plaintiff's claim must be upheld.

The president of the plaintiff corporation, importer of the present merchandise, testified that he has been engaged in the woodenware business for 25 years, during the course of which he managed factories where he became familiar with the manufacture of wooden articles. He stated that the merchandise in question is produced on different kinds of machines that perform various processes to complete the articles under consideration. He characterized the items before us as flatware used as "hot plate mats to put on the table or for hot pie pans to protect the surface of the table." The only other use for pieces of wood like those in the articles in question is in the manufacture of bathroom mats. None of these wooden pieces has ever been used in making bracelets or necklaces, or in the fashion of jewelry. The gist of the witness' testimony concerning beads is that they are always round and known as "turnings," made on a lathe, and that these pieces of wood, being flat, are not beads.

Defendant introduced the testimony of three witnesses, all of whom were experienced in buying and selling wooden beads. Their testimony is cumulative to the effect that any article, regardless of its shape, is a bead when it has a hole in it, and where the hole is drilled for the purpose of stringing. The witnesses identified several samples of various kinds. All are pierced in some way to make

them capable of stringing (defendant's illustrative exhibits A to M, inclusive). We have examined all of those exhibits and find that each is materially different from the items now before us. There is no reason, therefore, for further reference to them.

The classification of merchandise as beads has been the subject of much customs litigation, but, as we said in our decision in the case of *Brier Manufacturing Co.* v. *United States*, 25 Cust. Ct. 197, C. D. 1286, "it is difficult, if not impossible, to give an all-inclusive definition of a bead." The decision of the appellate court in that case (*Brier Manufacturing Co.* v. *United States*, 39 C. C. P. A. (Customs) 68, C. A. D. 465) made the following observation:

For half a century or more customs litigation has been replete with judicial decisions respecting the proper classification, under different tariff acts, of beads and materials of which beads are made, and of jewels, jewelry, and articles used or suitable for use in the manufacture of jewelry. The respective fields are so broad and the varieties of items in such fields are so numerous that classification of particular items often has presented the administrative officials and the courts with puzzling queries difficult to answer.

The present case does not involve commercial meaning. The statements of the witnesses, as they appear herein, are expressions of personal opinions. The record will not support a discussion of the principle of commercial designation. Common meaning, therefore, becomes a proper consideration herein.

Dictionary authorities define the word "bead" as follows:

Funk & Wagnalls New Standard Dictionary of the English Language, 1942 ed.: **bead,** *n.* **1.** A little perforated sphere, ball, cylinder, or the like, usually strung on a thread or attached to a fabric for decoration.

Webster's New International Dictionary, Second Edition, 1948: **bead,** *n.* * * * **2. a** A small perforated ball strung with others, and used for counting prayers, as in a rosary; * * * **b** A similar ball or polyhedron used on fabrics or as jewelry in strings;—esp. in *pl*; as, *beads* and girdles gay. **3.** Any small globular body; as * * *.

The Encyclopaedia Britannica, 1947 edition, states that "A bead is a small globule or ball used in necklaces, etc., and made of a great variety of materials."

Our determination of the issue before us on the basis of the present record, and in the light of the foregoing definitions, requires that much consideration be given to the samples of the imported articles (plaintiff's exhibits 1, 2, 3, and 4). Samples are potent witnesses. *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, T. D. 43090; *United States* v. *Bernard Judae & Co.*, 18 C. C. P. A. (Customs) 68, T. D. 44029; *United States* v. *The Hallè Bros. Co.*, 20 C. C. P. A. (Customs) 219, T. D. 45995.

A distinguishing feature of these pieces of wood is the groove with which many of them are fitted. There is nothing, either in the testimony herein or the definitions hereinabove quoted, that indicates in the slightest way that a bead in any of its forms is equipped with a groove. These grooves serve as the means for completing the patterns of the different imported articles. In other words, they are essential to the construction of the completed articles (exhibits 1, 2, 3, and 4). Furthermore, the perforations have been made in such a manner as to dedicate all of these pieces of wood to the specific use in the articles before us. There is no single piercing through the center which would permit stringing of the wooden pieces like an ordinary bead. Nor is there a downward perforation near the top so that if strung in a necklace, these pieces of wood would dangle, such as a pendant or a drop. The perforations serve the definite purpose of introducing a binding agent at certain points which permits all of the pieces being connected to complete the hot plate holders or coasters. Removal of these pieces of wood from the arrangements displayed in the present merchandise would render them useless.

The case of *Lidz Bros.*, 55 Treas. Dec. 1087, Abstract 8341, involved the same issue as that now before us. In that case, the merchandise was described as "belts composed of fancifully cut flat pieces of wood and wooden beads strung on strong strings." There, as here, the merchandise was classified as articles in chief value of beads; and plaintiff sought classification under the residuary provision for manufactures of wood, not specially provided for. In sustaining the claim of plaintiff, the court, speaking through the late Judge Sullivan, reasoned as follows:

> We are of opinion, even without taking Mr. Feik's testimony into consideration, that we can take judicial notice of the fact that these flat pieces of wood strung with the globular articles into these belts are not commonly known as beads. They are not within the dictionary definition of "bead," which is as follows:
>
> > A little perforated sphere, ball, cylinder, or the like, usually strung on a thread, or attached to a fabric for decoration.
>
> These flat pieces of wood are neither spheres, balls, or cylinders, nor are they like spheres, balls or cylinders.
>
> As to the component material of chief value in these articles: Mr. Feik's testimony fails to prove such. We have, however, examined the samples very carefully * * *. Although in each sample the beads preponderate in number, the wooden parts immensely preponderate in size. Each of the wooden parts is pierced with two holes. Each bead is pierced with but one hole. Each wooden part, in addition, contains more material than is contained in six times as many beads. It seems to us that in this case expert knowledge is not necessary to determine that the component material of chief value in these belts is the wooden parts, and that only common sense and a careful examination of the samples is sufficient to determine this fact.
>
> We therefore hold that the wooden parts are the component material of chief value in these articles, and that they are dutiable as manufactures in chief value of wood at 33⅓ per cent ad valorem under paragraph 410.

In a retrial of the same issue, involving substantially the same merchandise, the court adhered to its conclusion in the *Lidz Bros.* case, *supra.* See *W. Bernstein et al.* v. *United States*, 57 Treas. Dec. 711, T. D. 44020.

Reference may be made, also, to the case of *Baehr* v. *United States*, 59 Treas. Dec. 1673, Abstract 15880, which involved table mats about 3⅜ inches square, consisting of 16 small squares of wood, alternating black and yellow, linked together with cotton thread, with an ornamental border of semicircular flat pieces of wood held to the body of the mat by thread passing through a hole pierced through the base. In that case, the Government conceded that the squares of wood making up the table mats were not beads. The effect of the admission was to overrule the collector's classification of the merchandise as articles composed in chief value of beads and sustain the importer's claim under the catch-all provision for manufactures of wood.

On the basis of the present record, and in line with the cited cases, we hold the merchandise in question to be dutiable at the rate of 16⅔ per centum ad valorem under paragraph 412, as amended, *supra*, as manufactures of wood, not specially provided for, as claimed by plaintiff.

The protest is sustained and judgment will be rendered accordingly.