(C. D. 867)

EITINGER BEAD CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 20, 1944)

*Siegel & Mandell* (*Sidney Mandell* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*John J. McDermott* and *Richard F. Weeks*, special attorneys), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

OLIVER, Presiding Judge: This is an action brought to recover duties claimed to have been illegally exacted on a shipment of glass beads exported from Czechoslovakia and described on the invoice as "Glass beads: Maker: Joseph Ulbrich: 1089/5, col. 5 white." A notation on the invoice indicates that these beads were assessed as "beads in imitation of precious stones and semiprecious stones, 45% Par. 1503" of the Tariff Act of 1930. They are claimed to be properly dutiable as beads, not specially provided for, under the same paragraph at only 35 per centum ad valorem. The paragraph involved, insofar as pertinent, reads as follows:

PAR. 1503. Spangles and beads, including bugles, not specially provided for, 35 per centum ad valorem; * * * all other beads in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material composed, 45 per centum ad valorem: * * . * .

There is nothing in the official papers to indicate what precious or semiprecious stones the collector claims these imported beads imitate.

Upon the trial, importer's counsel sought information as to just what stone it would be claimed these beads imitated. Government counsel thereupon stated (R. 5, 10) that the defendant contends that these beads imitate white coral but might also resemble to some extent white agate, white jade, or white onyx and that while the imported beads imitate any or all of the above-named stones, it is claimed particularly that they imitate white coral.

The Government's position might thus be said to be that it did not particularly care which of the above-named semiprecious stones the imported beads might imitate so long as the court could find that they imitated any one of them and would thus sustain the higher duty imposed by the collector. There is nothing in the record to indicate that white coral, white agate, white jade, and white onyx are similar to or imitate each other.

The imported article of merchandise which is part of collective exhibit 1 is a short string of 38 shiny, dead-white, round glass beads,

measuring approximately 3/16″ in diameter, uniform in size and color; and bearing a tag designation 1089/5. The other string of beads in this collective exhibit 1 is a small string of shiny, white glass beads, 42 in number, not uniform in size but graduated and ranging from approximately 1/8″ to 5/16″ in size, to which is attached a tag with the number 31935. It is apparent that for the purpose of this case, only that portion of collective exhibit 1 to which we have referred as being marked No. 1089/5, is to be considered by the court and the beads in collective exhibit 1 identified by the tag No. 31935 will be disregarded.

Plaintiff introduced the testimony of four witnesses, including the president of the plaintiff corporation. Their testimony is to the effect that the imported beads (collective exhibit 1) are plain glass beads made by the home workers in Czechoslovakia by a pressing process; that they are made of common glass, unpolished; that beads in imitation of precious or semiprecious stones are made of a special composition glass containing a percentage of lead; that the imported beads are dead-white, china white, or chalk-white in color, and in general appearance the color and luster do not imitate white coral. The beads are uniform in size and uniform in color and show no imperfections, color casts, or graining, and the color does not change with age.

The Government called four witnesses whose testimony is to the effect that the imported beads do imitate white coral and that white coral is a semiprecious stone.

It has been fairly established by the record that natural coral, which is a product of marine life, is gathered in its natural state in a branchlike formation and is later cut and finished into various articles of commerce, among them being beads. The coral, as commercially sold, comes in various colors ranging from white to red, and the white coral would usually show veins or graining or slight indications of pink coloring and would vary slightly in color. The white coral when gathered from the ocean bed and as originally cut is a dirty white color and must be bleached before it is commercially salable.

Genuine coral beads, it seems, are not always uniform in size and shape. White coral is not uniform in color and does change with age, acquiring with the years an ivory or creamy color. The real coral beads also have slight imperfections and show signs of veins or graining. It is not disputed that coral is a semiprecious stone.

In the course of the trial Government counsel introduced in evidence a single string of graduated genuine white coral beads, (illustrative exhibit 2) and a second sample consisting of two single strings of graduated white coral beads (collective exhibit 3). These exhibits are obviously different in color from the imported beads (collective exhibit 1). The Government witnesses explain this difference in color

as due to the fact that the genuine coral beads in evidence had changed in color from what they were when originally produced and that the present soft, ivory shade was due to the age of the beads. One witness estimated the age of these coral beads as 15 or 20 years. Another witness estimated their age as "7 or 8 years up." These witnesses stated that the real coral beads in evidence could be restored by bleaching to a white color comparable to that of the imported beads.

It is unfortunate that these samples of genuine white coral beads introduced in evidence by the Government for comparison with the imported merchandise do not, according to the Government's witnesses, correctly represent the color of white coral. These witnesses have testified that new white coral is whiter than these samples. This leaves us in a position where our attention is directed to samples of genuine white coral (illustrative exhibit 2 and collective illustrative exhibit 3) but are told at the same time that they do not correctly illustrate that material.

We have in the present record the not unusual situation of a direct conflict in the testimony of the witnesses produced by the contending parties. We also have before us a sample of the imported merchandise, and samples of the semiprecious stone (coral) they are said to imitate. These samples are most potent witnesses.

The provision for "beads in imitation of precious or semiprecious stones" first appeared in paragraph 1403 of the Tariff Act of 1922. It was carried into the Tariff Act of 1930 in paragraph 1503.

These provisions have been before our court and our appellate court on many occasions since the passage of the Tariff Act of 1922. The language of the statute itself is not free from ambiguity on the question of just what the Congress intended to cover by this provision. Nothing is said about how close the imported beads must resemble or imitate the genuine stones, nor is the intent to imitate made a prerequisite in determining whether or not imitation is present. An examination of the legislative history does not throw any substantial light on the intent of Congress. To one not an expert in this field it is not difficult to envision beads in imitation of precious or semiprecious stones where distinctive cutting, color, and design indicate clearly what is intended to be imitated or copied. To cite a few such items would be the diamond, emerald, ruby, sapphire, topaz, and many others where shape, color, faceting, etc., clearly indicate their classification. The difficulty arises where, as in the case at bar, the imported article is just a shiny white glass bead with no cutting, faceting, color imperfections, graining or markings of any kind to distinguish it or give to it the characteristics of the genuine article it is said to imitate.

As the question of fact to be decided is whether or not the imported beads imitate a semiprecious stone—white coral—certain of the testi-

mony is of particular interest. The court (page 65) asked Government witness Gentile:

Presiding Judge OLIVER. What in the imitation do you refer to as giving it the characteristics that resemble the genuine coral, other than being a white, shiny bead?

The WITNESS. Nothing else.

Presiding Judge OLIVER. What are the characteristics?

The WITNESS. They resemble the genuine in form, color, luster, and in shape.

Presiding Judge OLIVER. So that a white, round bead that is shiny, would you say any such bead would be an imitation of coral?

The WITNESS. Yes, sir.

On cross-examination this same witness testified (page 69):

X Q. Is everything of white an imitation?—A. No, *some are genuine, like ivory.* [Italics ours.]

X Q. Do you say all articles of white would be an imitation?—A. All imitation stones, not real stones.

X Q. Anything besides the original?—A. Yes.

X Q. That is white and round?—A. Yes, is an imitation coral.

X Q. It couldn't imitate anything else?—A. Not to my estimation.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

X Q. However, in coral generally you have also traces of pink?—A. Sometimes.

X Q. And you also have traces, depending upon the formation of the coral?—A. The veins.

X Q. Do you note in collective exhibit 1 any traces of anything that imitates veins or traces of pink?—A. No, they have no veins.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Government's witness Szabo at pages 92/93 testified

Q. Based upon your experience, do you know any other semiprecious stone which is identical in color with collective exhibit 1?—A. I really don't know any semiprecious stone, or any kind of stone, that would be of this shade, referring to collective exhibit 1. &ast; &ast; &ast;.

And on cross-examination (page 94)

X Q. In nature coral is never dead white, is it?—A. No, sir.

X Q. And the beauty of coral is usually in its natural appearance that is represented by the exhibits that are before you, illustrative exhibit 2, and collective illustrative exhibit 3 for identification?—A. Yes.

X Q. Which to your eye are more or less cream white, or ivory white?—A. Yes.

X Q. And those are typical colors of the appearance of white coral?—A. Yes.

And at page 97:

X Q. Would all red glass pieces of stone imitate ruby, every piece of glass that is red in color?—A. Naturally it would. Anything resembling any color in glass, imitating the color of any real thing, would be an imitation of that stone, whatever it is.

On redirect examination (page 74) the witness testified:

R. Q. Do you see any veins in either illustrative exhibit 2 for identification, or collective illustrative exhibit 3 for identification?—A. I see no veins. I see the coral grains that go through it.

R. Q. Have you handled many coral necklaces of the same identical color ·as; collective exhibit 1?—A. Never.

R. Q. Have you handled coral necklaces or stones of the same color as collective·exhibit 1?—A. Same color, yes, sir.

On cross-examination the Government's witness D'Alia testified; (page 79):

X Q. There are no two colors in coral that are exactly alike?—A. No, sir.

X Q. Such a thing does not exist?—A. No.

And further (page 82):

X Q. Have you every seen coral that is of a porcelain white?—A. No.

Again at page 86, referring to illustrative exhibit 2 and collective· illustrative exhibit 3, this witness testified:

X Q. On the colors of the beads themselves, do you see traces of graining?—A.. Yes.

X Q. On all of those beads?—A. Yes.

X Q. Examine collective exhibit 1, and say whether there is any trace of' graining on that?—A. No. I have examined those already. I know there is. none.

It will be observed from the foregoing excerpts from the testimony of the. Government's own witnesses that the principal basis of simi-larity is color and shape, with luster as an added feature; that any shiny white bead would be called an imitation of white coral; that. the typical color of genuine white coral is cream white or ivory;. that genuine white coral generally shows traces of pink and of veins. or graining but that the imported beads show no such characteristics;. and that genuine white coral is not porcelain white in color.

In *Walco Bead Co.* v. *United States* (6 Cust. Ct. 281, C. D. 483). certain dead-white tubular glass beads were before the court. These· beads were classified for duty as being in imitation of semiprecious. stones (white, onyx, white agate, white jade, or white coral) and were· held to be properly dutiable as claimed in the protest as beads, not specially provided for. The samples in that case are before us in the· case at bar (illustrative exhibit A). While they differ in shape, they· are very similar in color and finish to the beads before us in the instant case.

Color alone has been held not to be sufficient resemblance to justify classification of beads as in imitation of precious or semiprecious, stones (*United States* v. *Judae & Co.*, 13 Ct. Cust. Appls. 164, T. D.. 41024). In the case at bar even the color of the imported beads, does not resemble that of the genuine coral beads (illustrative exhibit, 2 and collective illustrative exhibit 3). Mere resemblance does not make an article an imitation of another. Plaintiff's witnesses" uncontradicted testimony is that the imported beads are made from ordinary common glass and that beads in imitation of precious or

semiprecious stones are made from composite glass containing lead. In the *Judae* case, *supra*, the court, in this connection said (page 167):

According to the testimony of experts and dealers in imitation precious and semiprecious stones, the material used for making imitation precious or semiprecious stones is a composite glass containing lead which may be cut and faceted, thereby producing imitation precious or semiprecious stones.

It is safe to assume that if the beads before us were not made of common glass and did actually contain lead that the Government, with the official samples in its possession, would have made that fact clear. It is not contended that the presence or absence of lead in the glass beads should be the deciding factor but it is a fact to be considered in studying the record before us. There is nothing in this record to indicate that the manufacturers had any intent to imitate anything when making these beads. There is however, nothing in the statute that makes intent the basis for finding that a bead imitates a precious or semiprecious stone (*Leonard Levin Co.* v. *United States*, 27 C. C. P. A. 101, C. A. D. 69). Unlike the situation reflected in the record in the said *Leonard Levin* case, the record before us does disclose the inherent nature of the glass and we do have samples of the stones (coral) for visual comparison.

Upon the entire record we are convinced that the imported white glass beads (collective exhibit 1) do not imitate any precious or semiprecious stones. The protest is therefore sustained and we hold the beads in question as represented by item 1089/5 to be properly dutiable at 35 per centum ad valorem under paragraph 1503 of the Tariff Act of 1930.

To the extent indicated the protest is sustained; in all other respects and as to all other merchandise the protest is overruled.

Judgment will be rendered accordingly.