(C. D. 1136)

GERSTENZANG WERNER CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 4, 1948)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

OLIVER, Chief Judge: The protest in this case covers certain merchandise described on the invoice as "gallalith beads" assessed with duty at 45 per centum ad valorem under paragraph 1503, Tariff Act of 1930, as beads in imitation of precious or semiprecious stones, and claimed by the plaintiff to be properly dutiable at 35 per centum ad valorem under the same paragraph as beads, not specially provided for.

The pertinent portions of paragraph 1503 read as follows:

PAR. 1503. * * * beads * * * not specially provided for, 35 per centum ad valorem; * * * all other beads in imitation of precious or semi-precious stones, of all kinds and shapes, of whatever material composed, 45 per

centum ad valorem: *Provided,* That the rates on spangles and beads provided in this paragraph shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted * * *.

There is nothing in the official papers to indicate what precious or semiprecious stones the collector claims these imported beads imitate. Official samples of the merchandise were received in evidence as plaintiff's collective exhibit 1. A report of the analysis of such samples (plaintiff's exhibit 2) indicates that the beads are composed of colored galalith. Plaintiff further introduced in evidence a string of "barrel-shaped beads" in different colors (plaintiff's exhibit 3) which beads it was agreed were similar to the imported beads, with the exception that the beads imported were barrel-shaped, round beads, or round-flat beads. It is further conceded that the beads in plaintiff's exhibit 3 were similar to collective exhibit 1, except that portions of collective exhibit 1 have been broken up and are in fragments because of the processing necessary in analysis.

The importer introduced the testimony of three witnesses. A salesman with the plaintiff company for 17 years in the selling and handling of beads testified that he never handled beads in imitation of precious or semiprecious stones, but had only seen them in stores, and that the only beads that he had sold were made of galalith, wood, celluloid, and plastics. He stated that the imported beads were sold in the wholesale trade throughout the United States to infants' specialty departments in infants' and children's shops, and that plaintiff's exhibit 3 was "a galalith bead" similar to plaintiff's collective exhibit 1. Plaintiff's second witness, a sales manager connected with the Eitinger Bead Co., importer of beads and precious and semiprecious stones, who had 35 years' experience in the sale of beads and precious and semiprecious stones and who had handled many articles that were in imitation of precious and semiprecious stones, testified that he sold beads similar to collective exhibit 1 and exhibit 3 to toy concerns and passementerie establishments. Based upon his experience and knowledge, he stated that the imported beads were not beads in imitation of precious or semiprecious stones (R. 19) because they lacked the luster and appearance of precious and semiprecious stones, and that in appearance he would place them in a category with wood beads. Plaintiff's third witness, who had bought and sold beads of all kinds for over 25 years, including beads in imitation of precious or semiprecious stones and beads not in imitation of precious or semiprecious stones, testified that from his experience the beads represented by collective exhibit 1 and exhibit 3 were not in imitation of any precious or semiprecious stones because "They haven't got the brilliance; they haven't got the appearance" (R. 22), but that they are practically similar to wood beads. He further stated that beads in imitation of precious or semiprecious stones are transparent, have a

brilliance with a high luster, are sometimes faceted, and would perhaps be basic glass, whereas the beads before us are more of a composition that is made "from goats' milk, or something." (R. 23.) None of this testimony was challenged by cross-examination.

Defendant introduced the testimony of three witnesses. The first of these, Alexander C. Alexander, for 10 years a director of the Gem Trade Laboratory, testified that he handled and tested in the laboratory gems and gem stones of all kinds, and that he has also examined various imitation stones simulating precious or semiprecious stones which would be composed of ceramic materials, specifically glass, and in recent years, plastics (R. 26). He stated that some of the plastic materials in the beads before us do simulate precious and semi-precious stones (R. 27); that the green bead simulates a variety of quartz known as chrysoprase and also simulates some variety of jade; that he has seen chrysoprase and jade in the smooth shape, but not in the round or barrel shape; that the blue imported bead might simulate some minerals like sodalite or lapis lazuli; that he has seen lapis in a smooth shape and in the barrel shape but not exactly the same as the imported bead; that the blue bead would imitate lapis not only in color but in size and shape (R. 31); and that there are two shades of green which might simulate jade (R. 32). As to the white beads on the string in evidence he stated that there is "an off-white" which might simulate "a mutton-fat jade" if it were strung. The following testimony was then adduced:

PRESIDING JUDGE OLIVER: Again I ask you, Doctor, is your comparison. of these various-colored beads with the various semi-precious stones that you referred to based upon the color of the bead?

THE WITNESS: Upon the color of the bead, yes (R. 33).

The witness subsequently stated that the green bead not only imitates jade beads in color but also in shape and that there is an off-pink bead which could imitate some coral (R. 34) which he has seen in a shape similar to the imported bead. On cross-examination the witness gave the following pertinent testimony with respect to his experience with beads similar in color to those in collective exhibit 1 and exhibit 3:

X Q. How did they compare in brilliance and luster?—A. Well, that is something else again. That depends on the material. If the beads are composed of jade, why, they have a certain look about them, appearance, life, and luster that these things do not have.

X Q. Aside from the color, the same color or range—you see, when you deal with colors, you apply to them the name of the particular precious or semi-precious stone; is that true?—A. Yes.

X Q. To designate various shades of color?—A. Yes.

X Q. And aside from that designation of color, articles like Exhibits 1 and 3, in texture, in appearance, in brilliance, do not in any way resemble precious or semi-precious stones?—A. Not when I bring in the other physical factors.

X Q. I say, aside from that fact of color, they do not; is that correct?—A That's correct.

X Q. So that the only resemblance is in color?—A. In color and some shapes.

The Government's second witness, an importer of precious stones for over 10 years, testified that in his opinion collective exhibit 1 and exhibit 3 imitated the semiprecious stones which he had handled; that respecting collective exhibit 1, the red bead imitates coral, the green bead imitates jade, and exhibit 3 imitates "Lapiz, white coral, red coral, pink coral" in color; that he had seen coral, jade, and lapis in the shape of the beads in exhibit 3 (R. 44). On cross-examination, he stated his experience had been largely with "jades, semiprecious stones"; that he did not handle any beads that imitate semiprecious stones and that his experience was confined entirely to genuine stones. He further stated that the beads in collective exhibit 1 and exhibit 3 resemble precious or semiprecious stones in color only and that they do not resemble them in brilliance, luster, or texture; that a wood bead of the same color, in his opinion, would be an imitation of the genuine because it resembles it in color (R. 46); that in appearance these articles, aside from the colors, do not imitate any precious or semiprecious stones (R. 47). Counsel for the importer then conceded that all beads of the genuine precious or semiprecious stones may be in the same shape or form as the beads that are before this court (R.48).

The Government's third witness, a mineralogist who for 12 years had been engaged in selling minerals and precious and semiprecious stones, testified that he had not handled any imitation semiprecious stones (R. 50) but that he handled beads of semiprecious stones, and that from his experience the beads comprising collective exhibit 1 and exhibit 3 imitated semiprecious stones with which he was familiar; that the red bead in the wired section of collective exhibit 1 imitates the ox-blood variety of coral in both color and luster; that as to the green bead, there is a resemblance to chrysoprase in color and luster; that as to the two other beads on the wired section of collective exhibit 1, he could not reconcile these with any stones with which he was familiar. Respecting exhibit 3, the witness testified that the pink bead therein looks like the pink variety of coral in color only; that the light blue bead in exhibit 3 imitates sodalite in color only; and that the green bead in that exhibit imitates the green onyx variety only as to color (R. 52). On cross-examination he stated that the galalith beads of red color are in imitation of ox-blood coral because they resemble the latter in color, appearance, brilliance, and luster. The witness, who stated that he did not know what galalith was (R. 55), further testified that it is not a question of color alone, or texture or luster, that determines whether the bead is an imitation or not, and that he would not take a stone to be synthetic or genuine until he tested it. He subsequently stated that by the expression

"in imitation of" he meant "looks like" in color (R. 57). The witness further stated that he could not place the blue bead in collective exhibit 1 in any precious or semiprecious stone class; that the pink bead in exhibit 3 resembles pink coral but only with respect to color; and that the green bead on the wired portion of collective exhibit 1 imitates chrysoprase.

The legislative history on the provision for "beads in imitation of precious or semiprecious stones" does not throw much light upon the intent of Congress, and the many decisions which have been rendered by our courts, in interpreting this provision of the tariff act, still leave considerable doubt, so that each particular case, and each particular bead classified for duty under this provision, must stand upon its own record.

It has been held that to be subject to duty as an imitation of a precious or semiprecious stone it was not necessary to establish that the manufacturer in designing and making the bead intended it to imitate any specific semiprecious or precious stone. (*Leonard Levin Co.* v. *United States*, 27 C. C. P. A. 101, C. A. D. 69.) It follows that whether or not so intended, a bead would be subject to this classification if in its form and appearance, as imported, it actually does imitate some precious or semiprecious stone. In the case at bar, the beads are made of galalith. They are oval or round (R. 9), of various colors, and are pierced with the obvious intention of being strung or otherwise threaded to be attached to some article. All opaque white beads do not necessarily imitate white coral, white jade, or white chalcedony, nor do green beads necessarily imitate green jade, nor do all pink beads imitate coral—which incidentally runs through a great many shades from white to deep red—and all blue beads do not necessarily imitate lapis lazuli.

Where the claim of similarity to semiprecious or precious stones rests largely or entirely on color alone, the beads in each instance being brilliant or lustrous, this is not sufficient to sustain the collector's classification as imitations. In the instant case, the fact that the beads are made of galalith is not controlling as paragraph 1503 specifically provides for beads "of whatever material composed." To the casual observer the imported beads before us do not imitate any precious or semiprecious stones. No one looking at them would take them for anything other than ordinary beads. There is nothing in the shape or texture which would lead one to think of them as even closely resembling the stones discussed throughout this record. In fact, the witnesses refer to the color as the basis of their contentions that they imitate certain stones and the references to luster and brilliancy are most casual. In our judgment, these stones do not imitate precious or semiprecious stones and the protest should be allowed.

Testimony at the trial that the beads were used for teething rings is of little importance as their classification does not depend upon their use after importation. *Leonard Levin Co.* v. *United States, supra.* However, it is apparent from the evidence adduced herein that if the imported beads resemble precious or semiprecious stones at all, it is in color only, and even with respect to color there is a divergence of opinion among defendant's witnesses as to the particular precious or semiprecious stones they resemble in color.

It has been held that "Color by itself is not sufficient to constitute an imitation of a precious or semiprecious stone * * *." *United States* v. *Judae & Co.*, 13 Ct. Cust. Appls. 164, T. D. 41024. Also, "Mere resemblance does not make an article an imitation of another." *Eitinger Bead Co.* v. *United States*, 13 Cust. Ct. 50, C. D. 867.

Based on the record in this case and on an examination of the samples before us, we hold that the beads in issue, described on the invoice as "gallalith beads," are properly dutiable, as claimed, under the provision in paragraph 1503, Tariff Act of 1930, for beads, not specially provided for, at the rate of 35 per centum ad valorem. To this extent the claim of the plaintiff is sustained. Judgment will be rendered accordingly.