(C. D. 1487)

WALCO BEAD CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 17, 1952)

*Strauss & Hedges* (*Edward N. Glad* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Harold L. Grossman*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: These are protests, consolidated at the trial, against the collector's assessment of duty on certain merchandise, hereinafter described, at 45 per centum ad valorem under paragraph 1510 of the Tariff Act of 1930, as buttons, not specially provided for. It is claimed that the articles are properly dutiable at 20 per centum ad valorem under paragraph 1528 of said tariff act as imitation precious stones, cut or faceted, or imitation semiprecious stones, faceted.

The pertinent provisions of the tariff act are as follows:

PAR. 1510. * * * and buttons not specially provided for, 45 per centum ad valorem.

PAR. 1528. * * * imitation precious stones, cut or faceted, imitation semiprecious stones, faceted, * * * 20 per centum ad valorem; * * *.

At the trial, counsel for the importer stated that the merchandise in question was invoiced as 2-hole jewels or 2-hole roses under three different item numbers: No. 55512, No. 55515, and No. 55634. However, one of the invoices (entry No. 703508) describes these items as sewing-on stones. A claim as to item No. 55682 was abandoned.

A card of samples of the merchandise was introduced into evidence as plaintiff's exhibit 1. It contains, under each item number, five articles of different colors made apparently of glass and backed with metal foil. They are approximately ½ inch in diameter and almost ⅛ inch in thickness. The surface is convex and faceted, and the back is flat. They are pierced by two small holes near the center. Item No. 55512 is in the form of a rosette with six petals; item No. 55515 is in the form of a shamrock with four petals; and item No. 55634 is in the form of a diamond with four sections. Each item comes in five colors: Yellow, green, white or crystal, red, and blue.

Plaintiff's witness, Frank Lustigman, testified that he is a salesman for the plaintiff, in charge of all business conducted between millinery supply houses, embroiderers, and costume jewelry houses and the Walco Bead Co., Inc., dealer in beads, imitation jewels, and other trimmings. He has been with that firm for 18 years and has personally handled jewels and imitation jewels and imitation roses for approximately 27 or 28 years. He has personally sold merchandise identical to plaintiff's exhibit 1, mainly in New York, as the principal market for such items is the embroidery trade and the millinery supply houses in New York. He said that he buys and sells these items as imitation jewels and that he has seen the use made of them. The millinery trade stitches or sews them on a hat band or all over the hat, and the embroidery trade uses them to ornament dresses in conjunction with beads, rhinestones, or other kindred items.

Mr. Lustigman stated that his firm has a few button houses among its customers but that he did not sell them merchandise such as plaintiff's exhibit 1. He said that millinery supply houses do not use such items in the same manner as the button houses use other merchandise sold to them.

The witness testified that he had dealt in imitation precious and semiprecious stones for 28 years and that the articles in plaintiff's exhibit 1 are imitations of precious or semiprecious stones. He has seen genuine topazes, emeralds, diamonds, rubies, and sapphires. He stated that the three yellowish-colored articles on plaintiff's exhibit 1 are the same color as a topaz and that they imitate the sparkle of the topaz because of the foiling on the back. These same three articles

have the same translucency as a topaz. The three green stones on plaintiff's exhibit 1 are the same color as an emerald and have a luster and translucency similar to an emerald because of the foiling on their back. The three crystal articles on plaintiff's exhibit 1 have the same color as a diamond and the same luster and translucency as a diamond. The three red articles on plaintiff's exhibit 1 have the same color as a ruby and the same luster and translucency of a ruby because of the foiling on the back. The three blue articles on plaintiff's exhibit 1 have the same color as a sapphire and the same luster and translucency of a sapphire because of the foiling on the back.

Mr. Lustigman stated that he had become familiar with the term "faceted" by handling this type of merchandise and that the articles on plaintiff's exhibit 1 have facets, which he defined as "one of the small surfaces on a jewel or precious stone."

On cross-examination, Mr. Lustigman stated that he had never bought or sold or owned genuine topazes, emeralds, rubies, or sapphires, but that he had purchased diamonds for his wife. He said he had seen the genuine stones only on rare occasions except that he had seen diamonds very often. He was not familiar with the characteristics peculiar to each of the genuine stones. He testified:

X Q. In other words, the sum total of your experience with these precious stones is a very slight experience in having seen them at some time or other, on very rare occasions most likely.—A. Yes, that is right.

X Q. You certainly are not familiar with the characteristics peculiar to each of these stones, are you?—A. To the genuine stones, no.

X Q. That is right. So that when you testify that these various exhibits are similar to or resemble the topaz, the sapphire, the ruby, etc., you are merely stating that they bear a resemblance to what you conceive to be the precious stone?—A. What I know to be the precious stone.

\*         \*         \*         \*         \*         \*         \*

X Q. As a matter of fact, the only manner in which these articles that have been accepted in evidence imitate the genuine is in the color, isn't that so?—A. In the color and partly in the brilliancy.

Defendant called as a witness Charles Schner, Jr., president of Schner-Block Co., Inc., dealer in buttons. He testified that he has been with that firm for 20 years and has had experience in every phase of the business, including buying and selling. He purchases buttons both from foreign countries and from the domestic market and has sold them throughout the United States, including New York, St. Louis, Chicago, Philadelphia, and Baltimore. He has bought and sold "quite a few" articles such as or similar to those on plaintiff's exhibit 1 during his 20 years' experience and is familiar with such articles. Based upon his experience and knowledge, he stated that items No. 55512 and No. 55515 were buttons, but he would not say definitely that item No. 55634 was a button. The witness also testified as follows:

Q. Have you bought and sold articles such or similar to 55512 as buttons?— A. Yes, I have.

Q. Have you likewise bought articles and sold articles such or similar to 55515 as buttons?—A. Yes, I have.

Q. Mr. Schner, will you please tell the court what is the distinction between 55512, 55515 and 55634?—A. Well, as I see it, 55634 raises some doubt in my mind as to whether it is a button because of its utility value. When we purchase a button for the purpose of a button it serves two purposes; one, for utility purposes, that is, for closing a garment; and the other, for trimming. But when we purchase buttons we make sure that the button will serve both purposes. On item 55634 I could only see its value as a trimming; not as a button, a closure; and that is why I hesitated to classify it as a button.

On cross-examination, Mr. Schner stated that he had handled items similar to items No. 55512 and 55515 in three sizes and had seen them used as buttons on ladies' blouses.

Defendant's second witness, Carl Gottschalk, has been a buyer of buttons for 20 years for B. Blumenthal & Co., importer, manufacturer, and wholesaler of buttons. He stated that his firm does a business of many million dollars a year and employs quite a few buyers of buttons. Mr. Gottschalk has bought and sold buttons in this country and abroad and has sold them here. He has bought and sold items similar to those on plaintiff's exhibit 1 in fair quantities. Based upon his experience and knowledge in buying and selling, he stated that these articles were buttons and that he had bought and sold similar articles as buttons.

As stated above, the merchandise involved herein was classified by the collector as buttons and is claimed by the importer to be imitation precious or semiprecious stones. Under these circumstances, plaintiff has a twofold burden of proof: First, to show that the collector's classification is erroneous, and second, to establish that the classification for which it contends is correct. *W. T. Grant Company* v. *United States*, 38 C. C. P. A. (Customs) 57, 60, C. A. D. 440, and cases there cited. On the record presented, we do not find that plaintiff has met its burden on either count.

Since the collector classified the merchandise as buttons, it is presumed that he found all the facts necessary to sustain that classification. *United States* v. *Marshall Field & Co.*, 17 C. C. P. A. (Customs) 1, T. D. 43309; *E. I. du Pont de Nemours & Co.* v. *United States*, 27 C. C. P. A. (Customs) 146, C. A. D. 75. The evidence tending to show that the merchandise is not buttons consists of the testimony of Mr. Lustigman that he had not sold such items to button houses and had not seen them used as button houses use their purchases and the statement of Mr. Schner that he would not say definitely that item No. 55634 was a button since he could not see its value as a closure. On the other hand, Mr. Schner said that items No. 55512 and No. 55515 were buttons; that he had bought and sold similar items as buttons,

and had seen them used as such on ladies' blouses. Mr. Gottschalk said that all three items were buttons and that he had bought and sold similar articles as such.

The samples themselves are potent witnesses. As stated by Mr. Schner a button may have two purposes; one for utility purposes, to close a garment, and the other as trimming. See also the following definition in Webster's New International Dictionary:

**button,** *n.* **1.** A catch, of various forms and materials (originally a knob or stud), usually designed to fasten together the different parts of dress by being attached to one part and passing through a slit or loop, called a *buttonhole*, in the other, but sometimes merely ornamental or worn as a badge. * * *

The articles involved herein were obviously made to be sewn on material. The holes are placed near the center as they are in ordinary plain buttons, so they could easily be used as buttons to close a garment and are ornamental as well. While Mr. Schner had some doubt as to the utility of item No. 55634 as a button, its construction does not appear to be sufficiently different from the others as to prevent its use as a button. In *Harlem Adler & Co., Inc.* v. *United States*, 73 Treas. Dec. 123, T. D. 49362, it was held that a highly ornamental button composed of white-enameled wood from which were suspended small white metal chains with white-enameled discs was a button. Such an item seems of much less practical use as a button than the articles involved herein.

From the record and an examination of the sample, we conclude that the instant merchandise was properly classified by the collector as buttons.

Furthermore, plaintiff's proof on the other phase of the case is not decisive. Mr. Lustigman testified that the articles involved herein were sold as imitation jewels and that they were imitations of precious or semiprecious stones. However, his experience with the genuine jewels of which these were supposed to be imitations was very limited, confined largely to seeing such jewels on rare occasions. He was not familiar with the characteristics peculiar to them, and, in his opinion, the present articles imitated the genuine stones only in color and partly in brilliancy.

It has been held that "Mere resemblance does not make an article an imitation of another" (*Eitinger Bead Co.* v. *United States*, 13 Cust. Ct. 50, 55, C. D. 867) and that "Color by itself is not sufficient to constitute an imitation of a precious or semiprecious stone" (*United States* v. *Judae & Co.*, 13 Ct. Cust. Appls. 164, 167, T. D. 41024). In *Eitinger Bead Co., Inc.* v. *United States*, 17 Cust. Ct. 56, C. D. 1020, the court enumerated the factors which determine whether or not an article is an imitation of a precious or semiprecious stone as follows (p. 60):

\* \* \* There are certain characteristics peculiar to each stone, such as color, clearness, translucency, stripings, bandings, luster, brilliance, etc., which set it apart from all other stones and identify it as one of its own particular species. To be a true imitation, an article must be an imitation of a particular thing. \* \* \*

\*　　\*　　\*　　\*　　\*　　\*　　\*

Color, luster, and translucency of the genuine are some of the factors which a bead must possess in order to be an imitation of a precious or semiprecious stone. While there may be beads which possess one or more of these factors to the full degree, and the deficiency as to the other factors might not preclude the bead from being considered an imitation, in the case at bar where the bead falls short of the true color, the true luster, and the true translucency of a genuine agate or genuine onyx, etc., the beads in issue, in the condition as imported, cannot be said to be an imitation of an agate or an onyx or of any other named semiprecious stone.

In the instant case, plaintiff's witness had no more than a superficial knowledge of the characteristics of the genuine stones; therefore, his testimony is insufficient to establish that the imported articles have the true color, luster, and translucency of the genuine stones.

On the record herein, we hold that the merchandise was properly assessed with duty at 45 per centum ad valorem under paragraph 1510 of the Tariff Act of 1930, as buttons, not specially provided for.

The protests are overruled and judgment will be rendered for the defendant.