BEFORE THE FIRST DIVISION, DECEMBER 11, 1953

**No. 57678.**—G. Klein & Son v. United States, protests 133755–K and 134663–K (New York).

OLIVER, Chief Judge: This case relates to certain beads represented by the following invoice items:

| Protest | Invoice description |
|---|---|
| 133755–K | 30 bchs, glass beads loose—2638/2 col. 61 jet |
| 134663–K | 2645/2 ½″ matt jet 520 bchs. glass beads |
| | 2645/2 ½″ matt jet 420 bchs. glass beads |

Samples of the articles in question are in evidence (plaintiff's collective exhibits 1 and 2). For simplification in reference, the merchandise represented by the invoice item covered by protest 133755–K shall be referred to hereinafter as "the shiny bead" (plaintiff's collective exhibit 1), and the articles represented by the invoice items covered by protest 134663–K shall be referred to as "the dull bead" (plaintiff's collective exhibit 2).

All of the articles in question were classified as beads in imitation of precious or semiprecious stones, and assessed with duty at the rate of 45 per centum ad valorem under paragraph 1503 of the Tariff Act of 1930. Plaintiff claims that the merchandise is classifiable as beads, not specially provided for, under said paragraph 1503, and dutiable accordingly at the rate of 35 per centum ad valorem.

The collector's classification of the present merchandise was clarified at a pretrial conference at which time the issue herein was limited, as set forth in the court's order, as follows:

* * * the Collector of Customs classified for duty purposes the imported black shiny beads involved herein as beads in imitation of black onyx or obsidian and not in imitation of any other precious or semi-precious stones; and, further, that the Collector of Customs classified the imported so-called matt or dull black beads involved herein as beads in imitation of black onyx and not in imitation of any other precious or semi-precious stones * * *.

Consistent with the foregoing order of the court, Government counsel, at the time of trial, expressed defendant's position herein as follows:

MR. WEIL: Our position is that Collective Exhibit 2, which is the dull bead, is in imitation of black onyx and therefore properly dutiable as an imitation precious or semi-precious stone, to wit, black onyx, and Collective Exhibit 1, the shiny bead, is properly dutiable under paragraph 1503 as modified, at 45 per cent as an imitation precious or semi-precious stone, imitating the obsidian or black onyx.

The evidence adduced herein has been confined to the issue as above set forth. The testimony introduced by both parties (four witnesses appeared on behalf of plaintiff and three for defendant) and the several exhibits offered by each side are directed toward showing the characteristics of the beads under consideration as compared with those of genuine onyx or obsidian.

Emil Klein, plaintiff's first witness, is the senior member of the plaintiff's partnership, manufacturer and seller of religious articles, including rosaries. Referring to "the dull bead," which the witness accurately described as "a black bead, oval in shape, made of glass in the length of 2½ millimeters," he testified that he

designed the article, and that plaintiff uses such beads in the manufacture of rosaries (plaintiff's illustrative exhibit 3) as a replacement for geniune or natural cocoa beans previously used in the manufacture of rosaries (plaintiff's illustrative exhibit 4). Distinguishing between "the dull bead" under consideration and the natural cocoa bean, the witness stated that the said article in question is definitely inferior in color, not uniformly black, and showing a brownish or grayish tint, while the cocoa bean is jet black.

A genuine onyx bead was received in evidence (plaintiff's illustrative exhibit 5). Describing its appearance, the witness stated that it is a round, pierced, and "highly faceted bead," deep black in color and 6 millimeters in size (R. 28). Comparing it with "the shiny bead" under consideration, the witness stated that the genuine onyx bead is lustrous and faceted, the facets having been cut at an angle, while "the shiny bead" in question is comparatively dull in appearance, oval in shape, and about one-third in size. The witness stated that the marked distinction between the natural onyx bead and "the shiny bead" in question lies in the piercing of the articles. The natural onyx bead is "pierced from a flat surface"; "the shiny bead" is rounded at the point of piercing, evidently due to operation of the tool employed (R. 30).

A piece of genuine dull onyx was received in evidence (plaintiff's illustrative exhibit 6) as representative of the material of which defendant claims "the dull bead" is an imitation. The genuine dull onyx shows a uniformity of color that is lacking in "the dull bead" under consideration.

Frederick H. Pough, plaintiff's second witness, is a mineralogist who, for the past 17 years, has been curator of physical geology and mineralogy at the American Museum of Natural History in New York City where he has charge of the gems, making additions to the collection, giving lectures, writing papers, and answering questions of all sorts in connection with precious and semiprecious stones. In the course of his duties, he has been frequently consulted by customs officials.

The witness' testimony is largely a presentation of the distinguishing characteristics among the beads in question (plaintiff's collective exhibits 1 and 2), the genuine onyx beads (plaintiff's illustrative exhibits 5 and 6), and the obsidian beads (plaintiff's illustrative exhibit 9). His testimony can be summarized as follows:

Black onyx, in its natural state, is "a gray agate-like material," a very fine-grain variety of quartz. It is opaque, has a dull finish, and is artificially colored. The material is acquired in "nodules" (small roundish lumps or masses). Its quality depends on the degree of banding. "If there is considerable difference in the pore space, or the size of the impurities, you get a pronounced banding in the material. When it is rather uniform and there is no such difference, then you get a uniform looking material which will take dye evenly, and that is the material which is selected for dyeing to make onyx" (R. 46). In the trade, onyx is recognized as a semiprecious stone.

Obsidian is volcanic glass that occurs in tremendous quantities. When it fractures, it has a shiny surface and is fairly translucent. It has the properties of a glass. "If it cooled more slowly, it would have formed granite, but because it cooled so quickly that the grains could not grow, it became a glass" (R. 47). The witness agreed with the definition of "obsidian," read from Webster's New Collegiate Dictionary (5th edition) by the court as follows: "Volcanic glass; specifically glass having the same composition as rhyolite," and expressed the opinion that obsidian is neither a precious nor a semiprecious stone (R. 60).

The imported articles are glass beads which were originally round. They attained their present condition through a series of processes. Each bead has been produced from a mold. Both have the typical glass conoidal fractures and

are only incompletely faceted. The facets are round, as distinguished from the sharp and square ones characteristic of onyx. These facets do not completely cover the beads in question, either on the top or the bottom. Consequently, the beads before us have some of the original surface which is "smooth and shiny and a typical glass appearance."

"The shiny bead" in question was originally spherical. In the faceting process applied to the bead, the facets do not intersect completely so that "the intersections of the facets are very frequently truncated by a spherical surface" (R. 53). "The shiny bead" has "a small depression," indicative of manufacturing processes followed in producing glass beads, and there are a number of "nicks," resulting in a "typical conoidal glassy fracture." The onyx bead, illustrative exhibit 5, *supra*, was originally a cube and has been cut to its present shape. It is "completely faceted, including the top and bottom, where the bore hole enters" (R. 51). The drilled entrance is rough and shows a small point of fracture where the drill was removed, resulting in a broken surface that is dull, characteristic of onyx. This genuine onyx bead has been made with square and sharp facets that are smooth and polished. Summarizing the difference between the two kinds of beads, the witness testified as follows: "Difference in the drill hole; difference in the conoidal structure; the lustre of the broken surface, all those reasons" (R. 63). Both of those beads have been polished so there is no significant difference in the luster and brilliance of them.

Referring to the obsidian beads, illustrative exhibit 9, the witness testified as follows:

In these beads, Exhibit 9, the beads of Exhibit 9 have the same characteristics as the beads of Exhibit 5. They, too, are completely faceted. They have smooth polished and faceted tops and bottoms, that is the point where the drill hole enters and leaves the bead. Occasionally we get fracture places on this, as in the others, where you have a glassy, conoidal fracture. My inference would be that they are cut from a material that had to be cut and polished rather than something that was molded to begin with.

Comparing "the dull bead" under consideration with the dull onyx, illustrative exhibit 6, *supra*, the witness stated that the article in question is a glass bead that has been pressed out of a mold. He called attention to "a distinct ridge down the side," showing where "it was pressed out in some sort of mold." It has the usual drill hole through it, with the fracture around the surface, revealing a glassy conoidal structure, that is "usual with glass." The onyx bead has the typical dull appearance and fractured surface associated with the genuine onyx stone.

Joseph S. Rosenberg, plaintiff's third witness, is an importer of beads and stones, having been engaged in the business for a period of 38 years. He identified "the shiny bead" in question as a "fire polished bead" that he had seen made in Europe. Based upon his personal observation, he described the process of manufacture as follows (R. 73):

* * * These beads are made from glass, and the glass is heated to a certain degree, and they have a dye in a tong where they press it together. They press the heated glass in the tong, and usually have this size bead, about six pieces in each pressing. It depends upon the size of the bead. If the bead is smaller, they have 8, and if larger, 1, 2, 3. At the same time it punches the hole through and they cool it off, and then they fire polish it. When it comes out of the mold, it falls in pieces. If it doesn't fall in pieces, the girls break them off, little things caught in between the beads, that they can break them by hand. Then they put them in a hot oven, where they burn off the part in the center which left a little surface. That is why we call them fire polish.

Differentiating between "the shiny bead," characterized as the "fire polished bead," and the onyx bead, illustrative exhibit 5, the witness stated that the onyx bead is handmade, in which the hole is not centered but has been drilled side-

ways, whereas "the shiny bead" (fire-polished bead) has been produced by machine through a hand-stamping process in which the hole is centered. The onyx bead is heavier and has a better surface finish. Comparing "the dull bead" under consideration with the dull onyx bead, illustrative exhibit 6, the witness stated that the former "looks like wood or some kind of composition," and the latter is genuine onyx.

Arthur Klein, plaintiff's fourth witness, is the junior member of the plaintiff partnership. He buys the beads used by his firm in the manufacture of finished articles, including rosaries, that he sells. Comparing "the shiny bead" in question with the onyx bead, illustrative exhibit 5, the witness testified that the "greatest difference is in the cutting itself"; that the faceting on the article in question is regular, whereas the faceting on the onyx bead is irregular; and that the surface of "the shiny bead" is rounded while the onyx bead has a flat surface. Referring to "the dull bead" under consideration, the witness stated that it "shows a different mold mark running up and down the length of the bead," and has a brownish tint.

Defendant introduced the testimony of three witnesses. An outline of their testimony follows.

Max Kittay, defendant's first witness, has been an importer of precious and semiprecious stones, as well as imitation stones, which includes "table polish, fire polish * * * machine cut imitation stones." During his experience of 25 years, he has imported beads, like "the shiny bead" in question, which he ordered "from Europe as imitation onyx beads, either fire polished, table polished, or we order machine cut imitation onyx beads" (R. 105–106). He called the article an "imitation onyx bead." In written orders received by the witness from customers, the articles were referred to as "imitation onyx," or "imitation jet beads" (R. 112). The witness stated he had had no experience with "the dull bead" in question. Cross-examination developed that the witness' opinion that "the shiny bead" is an imitation onyx bead refers "only" to color. Amplifying that statement on redirect examination, the witness further testified to the effect that he regarded any black bead, irrespective of the type of faceting or the nature of cutting, to be in imitation of onyx.

Testimony of defendant's second witness, Milton Belgard, also an importer of stones, is cumulative of that offered by the previous witness, particularly with reference to the witness' statement that "the shiny bead" in question is "an imitation black onyx bead." This witness, like the previous one, testified that he based his opinion entirely on the color of the articles and that he regarded any black glass bead as an imitation black onyx bead.

Nathan Nathanson, defendant's third witness, is an assistant appraiser of merchandise at the port of New York, who, in the course of his official duties, has examined "over a billion dollars worth of precious, semi-precious and imitation precious and semi-precious stones," including black onyx. He expressed the opinion that "the shiny bead" in question is imitation onyx or obsidian, and stated that his reason therefor was "primarily the color," and also because both beads are round and faceted. On cross-examination, the witness stated that the primary characteristic of onyx is "first hardness, which would keep the dust in the air from abrading the polished surface," and another characteristic is the quality of workmanship generally reflected in a genuine stone. The witness agreed with plaintiff's testimony to the effect that the facets on "the shiny bead" in question "are not cut with geometric accuracy, and the top of the bead where the hole is pierced is not done with such fine perfection as we find in the genuine onyx bead." He further testified that the workmanship revealed in "the shiny bead" is inferior to that shown in the different aspects of the onyx bead, illustrative exhibit 5, which has a hand-drilled hole, faceting that has been better executed, and a per-

fectly flat surface showing "it has been on the lapidary's wheel," and a much finer finish. Comparing the texture of the two kinds of beads, the witness stated that "The texture of Exhibit 5 is flatter and finer and well polished," while the texture of Exhibit 1 shows indications of molding, and with the surface finish not so well executed as Exhibit 5." Referring to "the dull bead" in question, the witness regarded it to be more in imitation of matted onyx, and "slightly to the obsidian." He stated that genuine matt onyx in the shape of "the dull bead" in question is extremely scarce. Examination of the dull onyx bead, illustrative exhibit 6, through a magnifying glass revealed that that bead has a finer finish than "the dull bead" under consideration.

Lexicographic authorities support plaintiff's testimony to the effect that "obsidian" is not a semiprecious stone. Funk & Wagnalls New Standard Dictionary defines "obsidian" as "An acid glassy volcanic rock," and Webster's New International Dictionary says that "obsidian" is "Volcanic glass of a solid compact structure and containing little or no water * * *." The effect of the showing that obsidian is not a semiprecious stone, as we find herein, is a further limitation of the issue before us to a determination whether the beads in question are in imitation of onyx which is a semiprecious stone.

Plaintiff's testimony is sufficient to show that the articles before us are machine-made glass beads, produced in a molding or a stamping process and dyed black, and that they are inferior to the onyx beads in the manner of cutting, the execution of the faceting process, the quality of texture, and the fineness of finish.

The only phase of defendant's testimony that lends support to the collector's classification appears in the consistent statement of the three witnesses who appeared on behalf of the Government that the color of the beads under consideration is the same as black onyx. Such a degree of similarity is relatively insignificant and not sufficient to support classification of merchandise as imitation of precious or semiprecious stones. "Color by itself is not sufficient to constitute an imitation of a precious or semiprecious stone." *United States* v. *Judae & Co.*, 13 Ct. Cust. Appls. 164, T. D. 41024.

In the case of *Eitinger Bead Co.* v. *United States*, 13 Cust. Ct. 50, C. D. 867, which involved the same issue as that presented herein, we stated as follows:

The provision for "beads in imitation of precious or semiprecious stones" first appeared in paragraph 1403 of the Tariff Act of 1922. It was carried into the Tariff Act of 1930 in paragraph 1503.

These provisions have been before our court and our appellate court on many occasions since the passage of the Tariff Act of 1922. The language of the statute itself is not free from ambiguity on the question of just what the Congress intended to cover by this provision. Nothing is said about how close the imported beads must resemble or imitate the genuine stones, nor is the intent to imitate made a prerequisite in determining whether or not imitation is present. An examination of the legislative history does not throw any substantial light on the intent of Congress. To one not an expert in this field it is not difficult to envision beads in imitation of precious or semiprecious stones where distinctive cutting, color, and design indicate clearly what is intended to be imitated or copied. * * *

There is nothing in the present record to indicate that the foreign manufacturer intended to imitate black onyx or obsidian in the production of the beads in question. The preponderance in weight of the evidence shows that the beads before us are made of glass, that they were produced by machine either by a molding or a stamping process, and that, in texture, execution of faceting, and grade of finish, they are materially different from genuine or natural onyx, and obsidian.

On the basis of the present record, we find that neither "the shiny bead" nor "the dull bead" under consideration, represented by the invoice items hereinabove enumerated, are in imitation of precious or semiprecious stones, as classified by the collector. The said beads are properly classifiable under the residuary provision

in paragraph 1503 for "beads * * * not specially provided for," and dutiable at the rate of 35 per centum ad valorem, as claimed by plaintiff.

To the extent indicated, the protests are sustained and judgment will be rendered accordingly.